HOWARD R. CONANT, JR., Plaintiff-Appellant, v. ERNEST A. KARRIS *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 87—675

Opinion filed December 30, 1987.

Robert W. Gettleman and Jamie L. Kittel, both of Chicago (D'Ancona & Pflaum, of counsel), for appellant.

George B. Collins and Deborah M. Jervis, both of Collins & Bertelle, of Chicago, for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Howard R. Conant, Jr., a real estate developer, filed a complaint alleging that he sought to purchase certain commercially developed real estate and, along with his real estate broker, defendant Ernest Karris (broker), developed an offer based upon certain confidential information he possessed; however, the seller rejected plaintiff's offer of $1,500,000 and accepted the offer of $1,600,000 made by the broker's brother, defendant Nicholas A. Karris (buyer). The trial court found plaintiff had failed to allege any wrongdoing by defendants. Pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), the court dismissed the first amended complaint for a constructive trust, accounting and other relief.

Other defendants include American National Bank and Trust Company of Chicago as trustee holding legal title to the real property, dismissed by the trial court as a party; defendant La Salle Hubbard

Corporation, of which Nicholas Karris is the president and sole share-holder, and which is beneficial owner of the real estate; and defendant Water Tower Trust and Savings Bank, dismissed *sua sponte* by the trial court as a party.

The real estate at issue is a commercially developed parcel located at 125 West Hubbard Street in Chicago. The first amended complaint alleges that in September 1984, the defendant broker approached plaintiff and informed him that the subject property was for sale. In early January 1985, plaintiff and the defendant broker, "the latter acting as plaintiff's broker, together developed for plaintiff's sole benefit an offer" to buy the property at a price of $1,500,000. The offer was "generated using confidential information developed by plaintiff ***, which plaintiff disclosed to [the broker] solely in his capacity as plaintiff's real estate broker." The confidential information was contained in a computer printout, a copy of which was given to defendant broker in his capacity as plaintiff's broker.

On January 9, 1985, the defendant broker "informed plaintiff that an offer to purchase the property for $1,400,000 had been submitted to the owner and that the owner had agreed that said price was acceptable, although the earnest money had not yet been deposited. Ernest Karris urged plaintiff to move quickly to submit the offer of $1,500,000 that Ernest Karris had suggested."

The amended complaint alleges further that the broker, "without plaintiff's knowledge or consent, disclosed the terms of plaintiff's offer and the confidential information to his brother, Nicholas Karris, and solicited Nicholas to submit a competing offer to the owner. At that time, Nicholas knew that Ernest was plaintiff's broker for the purchase of the Property."

On January 15, 1985, the defendant broker asked plaintiff to "hold" his offer because "our group," including his brother, wanted to make a competing offer. "Plaintiff refused to 'hold' his offer, protested the proposed submission by [the broker] of a competing offer for the property, and demanded that [the broker] continue to act only as plaintiff's broker and not for a competing potential purchaser."

On January 16, 1985, plaintiff submitted an offer for $1,500,000 to the seller. The written offer included the defendant broker's name as the agent entitled to a broker's commission.

On January 22, 1985, the defendant buyer offered to purchase the property for $1,600,000 and the seller accepted the offer. On January 25, 1985, the seller informed plaintiff that his offer had been rejected.

On December 18, 1985, plaintiff filed this suit. On June 18, 1986, the trial court dismissed plaintiff's original complaint for constructive

trust and other relief. The court specifically found that the complaint was fatally deficient in that "it is unclear whether the defendants' successful bid on the property directly competed with plaintiff's bid, submitted at the same time, and thus violated the duties imposed by the defendants' relationship to plaintiff, or whether plaintiffs' bid was rejected before the defendants submitted their successful bid."

On July 30, 1986, plaintiff filed a first amended complaint, which includes the precise chronology of the submission and rejection of the parties' offers. Count I of the complaint seeks the imposition of a constructive trust, and an accounting for all rents, profits and benefits earned by defendants from the property. Count II seeks damages for the broker's breach of fiduciary duties. Count III alleges tortious interference with prospective business advantage. Count IV seeks damages under the Real Estate License Act of 1983 (Ill. Rev. Stat. 1985, ch. 111, par. 5801 *et seq.*), and plaintiff now concedes that this count was properly dismissed. Count V charges conversion of confidential information. Count VI seeks damages for unjust enrichment.

On February 6, 1987, the trial court found that each count was "fatally deficient because each count fails to allege facts which would indicate tortious conduct or wrongdoing." The court found that the pleading failed to "set forth the details of this 'confidential information' nor does it set forth how the information was used to persuade the seller to accept" the buyer's offer. The court entered an order striking and dismissing the complaint with prejudice pursuant to section 2—615, and consequently found it unnecessary to rule on defendants' section 2—619 motions.

A section 2—615 motion to dismiss admits all well-pleaded facts and reasonable inferences that can be drawn from such facts. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 428 N.E.2d 1028; *Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 391 N.E.2d 479.) The dismissal of a complaint for failure to state a cause of action will be affirmed on appeal only where no set of facts can be proved under the pleadings which would entitle plaintiff to relief. (*Griffis v. Board of Education, District 122* (1979), 72 Ill. App. 3d 784, 391 N.E.2d 451.) In reviewing the dismissal of a complaint, the reviewing court should interpret the facts alleged in a light most favorable to plaintiff. (*Theodosakis v. Austin Bank* (1981), 93 Ill. App. 3d 634, 417 N.E.2d 806.) If the facts alleged and reasonable inferences drawn therefrom demonstrate any possibility of recovery, the order of dismissal must be vacated. *Riley v. Singer* (1979), 75 Ill. App. 3d 1036, 394 N.E.2d 746.

Counts I and II set forth a cause of action for breach of a fiduci-

ary relationship for the purpose of imposing a constructive trust upon the real property. Defendants argue that the complaint fails to allege the existence of a fiduciary relationship. They maintain that the pleading merely "implies that Karris was 'plaintiff's broker.' " It only states that the broker "simply made known to [plaintiff] his availability to deliver any offer that [plaintiff] chose to make."

■■ ■ A *prima facie* case of agency may be created by inference or presumption, and the existence of such a relationship is generally a question of fact to be determined by the trier of fact. (*Stefani v. Baird & Warner, Inc.* (1987), 157 Ill. App. 3d 167, 510 N.E.2d 65.) Defenses which are factual in nature, rather than legal, do not constitute grounds for a motion to dismiss, and instead should be set forth in an answer to plaintiff's pleading. (*Dorin v. Occidental Life Insurance Co.* (1971), 132 Ill. App. 2d 387, 270 N.E.2d 515.) Appellate review is limited to the issue of whether a cause of action was set forth in the complaint, and the merits of the case are not before us. *Tru-Link Fence Co. v. Reuben H. Donnelley Corp.* (1982), 104 Ill. App. 3d 745, 432 N.E.2d 1188.

The complaint alleges that in September 1984 the defendant broker "solicited plaintiff to retain [him] as plaintiff's broker for the sole purpose of attempting to purchase a certain commercially developed parcel of real estate." The pleading continues, "As plaintiff's broker, [he] assumed fiduciary duties toward plaintiff imposed by common law, by statute ***, and by regulation ***." Furthermore, defendant was "acting as plaintiff's broker" when they together developed the offer of $1,500,000. In addition, the defendant broker attempted to restrict plaintiff's efforts to present the offer.

"On January 15, 1985, Ernest Karris requested that plaintiff 'hold' his Offer to purchase the Property, because as [the broker] explained, 'our group,' including [his] brother Nicholas Karris, wanted to make a competing offer to purchase the Property. Plaintiff refused to 'hold' his Offer, protested the proposed submission by [the broker] of a competing offer for the Property, and demanded that [the broker] continue to act only as plaintiff's broker and not for a competing potential purchaser."

The complaint further alleges that the broker, "contrary to plaintiff's instructions and despite plaintiff's protest," submitted to the seller his brother's competing offer.

The facts alleged show that the relationship between plaintiff and the defendant broker went far beyond a role of the broker's merely being available to deliver an offer, or simply coming into contact with

a prospective purchaser. The broker defendant solicited plaintiff to retain him as a broker for the purpose of obtaining this particular piece of property; plaintiff accepted those services and entrusted the broker with confidential information; the broker developed a proposed offer with plaintiff; the broker informed plaintiff of another offer the seller had received; the broker urged plaintiff to submit his offer; plaintiff identified defendant as his broker on the written offer; and the broker later asked plaintiff to hold his offer until his brother submitted a competitive bid. The allegations are sufficient to permit the issue to be submitted to a trier of fact.

■■ We find the specificity of the factual allegations sufficient to state an agency relationship between plaintiff and the defendant broker for purposes of purchasing the particular piece of property in question. (See *Stefani v. Baird & Warner, Inc.* (1987), 157 Ill. App. 3d 167, 510 N.E.2d 65.) The complaint clearly alleges breach of the defendant broker's fiduciary duties. The broker not only put himself in a position adverse to plaintiff's, but also benefited by receiving a higher commission and an exclusive leasing arrangement from his brother. See *Jeffrey Allen Industries, Inc. v. Sheldon F. Good & Co.* (1987), 153 Ill. App. 3d 120, 505 N.E.2d 1104.

Defendants also rely upon the trial court's finding that the complaint fails to set forth any details about the confidential information. Defendants contend that the complaint only describes the confidential information in general terms.

■■ We find that the complaint sufficiently details the confidential information developed by plaintiff in determining what offer to make to the seller. The pleading specifies:

> "The Offer was generated using confidential information developed by plaintiff, including a financial projection, the economic justification for the $1,500,000 purchase price which included renovation cost projections and rental fee projections, the identity of prospective anchor tenants for the Property, architectural drawings prepared by plaintiff, and marketing strategies for renting space in the Property ***."

The complaint clearly describes the confidential information.

■■ The trial court also asserted that the complaint failed to set forth how the confidential information was used. We do not agree.

The complaint here specifically states that the broker "disclosed the terms of plaintiff's Offer and the Confidential Information to his brother, Nicholas Karris, and solicited Nicholas to submit a competing offer to the Owner. At that time, Nicholas knew that Ernest was plaintiff's broker for the purchase of the Property." In addition, the

complaint pleads that the broker

"appropriated and converted for the use by and the benefit of his brother Nicholas Karris the Offer and the Confidential Information disclosed to him by plaintiff, that use being the generation of a competing offer to purchase the Property and that benefit being the acquisition of the Property. Further, upon information and belief, Ernest Karris received the additional benefit of acting as the exclusive leasing agent for the Property, which benefit he would not have received had plaintiff purchased the Property."

The complaint also alleges that defendant broker used the confidential information by duplicating a substantial portion of the language in the written offer plaintiff developed based upon the confidential information. The typewritten rider which the buyer added to a form contract included substantial similarities to plaintiff's typewritten rider. This allegation further tends to indicate that defendants competitively used the knowledge of plaintiff's offer and confidential information.

Defendants attempt to distinguish this case from *Stefani* and similar cases on the basis that they involved brokers who concealed information or secretly dealt with one of the parties. The absence of allegations of concealment does not alter our holding here.

The complaint alleges that the broker denied the request of plaintiff, his principal, to submit a bid in an attempt to permit the broker's brother to submit his own bid, without competition, based on the same confidential information developed by plaintiff. The broker knew he had advised plaintiff that the seller was willing to accept $1,400,000. The broker then told plaintiff to offer $1,500,000, but later tried to have plaintiff hold the offer. Shortly after plaintiff submitted his offer, defendants offered the seller $1,600,000. We see little difference between these facts and a more blatant type of impropriety or actual concealment.

Defendants also contend that a constructive trust is not appropriate here because plaintiff paid no money for the property. Defendants' argument makes little sense. It would permit a broker to breach a fiduciary duty by preventing his principal from acquiring the property, and then the breach itself would shield the broker from liability.

In addition, it is not necessary to have a fiduciary relationship between plaintiff and the buyer. No fiduciary relationship need exist between the person holding the property and the aggrieved party. (*Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 411 N.E.2d 1067.) A third party who participates in a breach of a fiduciary's duty

of loyalty, or knowingly accepts any benefit from such a breach, becomes directly liable to the aggrieved party. *Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 411 N.E.2d 1067.

In the present case, therefore, we find that plaintiff sufficiently alleges the existence of an agency relationship giving rise to a fiduciary obligation, the breach of which may result in the creation of a constructive trust. The complaint, therefore, sufficiently describes defendants' use of the confidential information, which constituted a breach of the fiduciary duty. (See *Bush v. Palermo Realty, Inc.* (Fla. App. 1983), 443 So. 2d 104; *Wolfe v. Wolfe* (1980), 81 Ill. App. 3d 833, 401 N.E.2d 1111.) The trial court erred in dismissing counts I and II.

Count III charges intentional interference with business advantage. Defendants argue that they engaged in lawful competition. Justification for a third party's interference with a contractual relationship is an affirmative defense not to be considered as support for the trial court's granting a motion to dismiss, unless it appears on the face of the complaint. (*Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 275 N.E.2d 429.) The complaint here alleges:

> "On January 9, 1985, Ernest Karris informed plaintiff that an offer to purchase the Property for $1,400,000 had been submitted to the Owner and that the Owner had agreed that said price was acceptable, although the earnest money had not yet been deposited. Ernest Karris urged plaintiff to move quickly to submit the Offer of $1,500,000 that Ernest Karris had suggested."

Plaintiff had a reasonable expectancy that his offer would be accepted, and defendants were aware of this expectancy. Unlike the situation in *Stefani*, there is nothing in the complaint here to indicate that the property was listed in a multiple listing service or that there were a number of potential buyers. By converting the confidential information, however, defendants submitted a competing offer which was $100,000 higher while plaintiff's offer was pending and ultimately acquired the property. Thus, the factual allegations support plaintiff's conclusion that "defendants intentionally interfered with plaintiff's expectancy and prevented the formation of a business relationship between plaintiff and the Owner." We conclude that count III sufficiently states a cause of action for intentional interference with a business advantage.

Count V alleges conversion of confidential information. Defendants contend that count V fails to allege conversion because plaintiff "fails to allege that he was ever deprived of the benefit of his 'confidential information.' *** Conant had his original computer print-

out at the time that he drafted and submitted his offer to the seller."

The complaint states that the confidential information was "contained in a computer printout, a copy of which was given to Ernest Karris in his capacity as plaintiff's broker. On two occasions, Ernest Karris admitted to plaintiff that he had disclosed the printout to Nicholas Karris." As we have discussed, the complaint sufficiently alleges that the information in this printout was used by defendants. Once confidential information is released to competitors, it hardly can be said that the data is still confidential. Thus, the original owner would be deprived of the benefit of the information. We hold that count V sufficiently states a cause of action for conversion. The trial court erred in dismissing count V.

Count VI seeks damages for unjust enrichment. Defendants contend that, "[t]he amended complaint does not allege that [the broker] acquired any property whatsoever that he should not be permitted to retain. Nicholas Karris purchased the property." In addition, defendants argue that the "complaint fails to allege any circumstances under which Nicholas Karris should not be permitted to retain the property that he purchased." As discussed herein, the allegations of wrongdoing on the part of defendants are sufficient to show that under principles of equity and good conscience, defendants should not be permitted to retain the benefits and profits of the property which are wrongfully obtained. (See *Knapp v. McCoy* (N.D. Ill. 1982), 548 F. Supp. 1115, 1118; *Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 411 N.E.2d 1067.) Count VI sufficiently states a cause of action for unjust enrichment.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County dismissing counts I, II, III, V, and VI, and remand the cause for a determination on those counts consistent with the views expressed herein. We affirm the trial court's dismissal of count IV.

Judgment affirmed in part; reversed in part and remanded.

RIZZI and WHITE, JJ., concur.