**FMC CORPORATION,**
**Plaintiff–Appellant,**

v.

**CAPITAL CITIES/ABC, INCORPORATED, Defendant–Appellee.**

No. 89–2599.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1990.

Decided Oct. 4, 1990.

Joseph A. Cari, Jr., Michael T. Trucco, Peter J. Wifler, Brian L. Crowe, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for plaintiff-appellant.

Dale M. Cohen, Samuel Fifer, Jeffrey P. Lennard, Richard Chessen, Duane C. Quaini, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

FMC Corporation brought suit against Capital Cities/ABC, Inc. for conversion and for misappropriation of its business information in connection with ABC's refusal to return copies of the FMC documents ABC had in its possession. The district court dismissed FMC's claims. We affirm in part and reverse in part.

## I. FACTS

The facts of this case are, we hope, unique. On October 20, 1988, Capital Cities/ABC, Inc. ("ABC"), broadcast a story on its World News Tonight show that dealt with FMC's work on the Bradley Fighting Vehicle (the "BFV") for the United States Army. During this broadcast, ABC displayed what appeared to be several of FMC's documents relating to FMC's pricing policies and to FMC's contract with the U.S. Defense Department to provide spare parts for the BFV. The ABC news reporter covering the story reported, on the air, that the documents displayed in the newscast were, in fact, copies of FMC's documents. Four of these corporate documents are apparently missing from FMC's files.[1] FMC does not have copies of the documents. It is apparently undisputed that ABC possesses copies of these documents. (In fact, it is quite possible that ABC has the originals of these documents.) It is also undisputed that ABC was not directly responsible for the loss of FMC's documents. ABC has refused, on various grounds and after repeated requests, to return the documents to FMC. Indeed, ABC has refused to even supply copies of the documents to FMC.

FMC brought suit in state court against ABC for conversion and for misappropriation. FMC sought to have the documents replevied and asked for damages to compensate it for the misappropriation of its confidential business information. ABC had the suit removed to federal court. Jur-

---

1. A list of the documents missing from FMC's files, which FMC believes to be in the possession of ABC, is attached as Exhibit A to Appellant's Brief. ABC notes, however, that three of the seven documents listed in this exhibit have been found by FMC. Appellee's Brief at xii. Whatever the number, our holding is limited to the return of those documents of which FMC no longer has a copy.

isdiction is premised on diversity of citizenship. The district court dismissed FMC's conversion claim on the grounds that copies of documents could not be converted and dismissed FMC's misappropriation claim on the grounds that confidential business information could be misappropriated only by a direct business competitor, something which ABC is not. We affirm the dismissal of FMC's misappropriation claim but reverse the dismissal of FMC's conversion claim.

## II. LEGAL ANALYSIS

### A. Choice of Law

■ The parties disagree over what law should apply. The district court applied Illinois law because it believed that neither party had addressed the choice of law issue. FMC, which has its headquarters in California, asserts that California law should apply because the documents were taken in California and because California is where, since the taking, FMC is being deprived of their use. ABC contends, on the other hand, that New York law should apply because New York is where it is maintaining control over the documents.

Illinois has adopted the "most significant contacts" test for determining choice of law in tort cases. *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970); *Jackson v. Miller–Davis Co.,* 44 Ill.App.3d 611, 3 Ill. Dec. 161, 358 N.E.2d 328 (1976); *see also* Restatement (Second) of Conflict of Laws § 145 (1971) [the "Restatement"]. We think that, under the circumstances, the law of California should be applied to FMC's claims. There are two fundamental elements of the tort of conversion. The first is that the plaintiff own or have a right to use the property in question at the time of the conversion. The second is the exercise of unlawful dominion over the plaintiff's property by the defendant in a manner that is inconsistent with the plaintiff's title or rights. *See, e.g., Moore v.*

*Regents of Univ. of Cal.,* 215 Cal.App.3d 709, 249 Cal.Rptr. 494, 503 (1988).

Comment i to section 147 of the Restatement states that the issue of whether the plaintiff is entitled to use the converted property is actually a property question. On the other hand, whether the defendant asserted wrongful dominion over or wrongfully detained the property at issue is a conversion issue sounding in tort. We believe that, in this case, the law of California should control the resolution of both questions. Section 247 of the Restatement states that "[i]nterests in a chattel are not affected by the mere removal of the chattel to another state." Hence, we will apply California law to decide whether FMC is entitled to the possession or use of the documents retained by ABC. With respect to the conversion issue, we recognize that ABC apparently took and maintains control over copies of FMC's documents in New York. But the fact that FMC is located in California and is feeling the loss of its documents there means that the "most significant contacts" for purposes of FMC's conversion and misappropriation claims are to be found in California.[2] We believe that California has the greatest interest here. That state has an important interest in insuring that the property of its citizens is returned.

■ We will, however, apply Illinois law to determine whether ABC has a First Amendment-related defense to FMC's conversion and misappropriation claims. ABC's World News Tonight show was televised throughout the world. Hence, for the purpose of the First Amendment and the dissemination of news, no one state actually has more "significant contacts" with this dispute than any other. We will therefore apply the law of the forum as well as federal law to ABC's First Amendment-related defenses.

---

**2.** We believe that the particular choice of law is not crucial in this case. While the facts of this case may present a novel question, our analysis does not. The same result would be reached under the conversion and replevin laws of most states. As one district court recently noted,

"[t]he principles of what conduct constitutes conversion are universal." *P.M.F. Services, Inc. v. Grady,* 703 F.Supp. 742, 743 n. 1 (N.D.Ill. 1989). Indeed, the claims of trover and conversion have been around, in much the same form, for centuries.

## B. Conversion

■ In California, as in most states, the tort of conversion consists of " 'a distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his title or rights therein, ... without the owner's consent and without lawful justification.' " *Moore v. Regents of Univ. of Cal.*, 215 Cal.App.3d 709, 249 Cal.Rptr. 494, 503 (1988) (citing 18 Am. Jur.2d, Conversion, 1, at 145–46 (footnotes omitted)). It is " 'an act of wilful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession.' " *De Vries v. Brumback*, 53 Cal.2d 643, 2 Cal.Rptr. 764, 767, 349 P.2d 532, 535 (1960) (quoting W. Prosser, *Prosser on Torts* 66 (2d ed. 1955)). We believe that, under any of the scenarios we shall outline, ABC is chargeable with conversion under California law and hence must return to FMC either the originals, if it has them, or a copy of any of FMC's documents listed in Exhibit A of Appellant's Appendix, of which FMC no longer has a copy.

■ FMC contends that ABC has several of its documents or that ABC has copies of these documents. Paragraph 14 of FMC's Second Amended Complaint alleges, for example, that "ABC has received the stolen documents, or copies thereof." *See also* Appellant's Appendix at 1. ABC contends that it does not have the originals and that FMC has not, and cannot, allege that it does. We read the plain language of FMC's complaint differently, however. If ABC has the originals, they must be returned to FMC for it is axiomatic that property known to belong to another must be returned. *See DeTomaso v. Pan American World Airways, Inc.*, 172 Cal.App.3d 1170, 218 Cal.Rptr. 746, 754 (1985) (quoting section 485 of California's Penal Code) ("One who finds lost property under circumstances which give him knowledge of or means of inquiry as to the true owner, ..., without first making reasonable and just efforts to find the owner and restore the property to him, is guilty of theft.") ABC can, however, keep copies of the documents so that its First Amendment investigative activities will not be chilled or discouraged. ABC refuses to show the documents in question to anyone, claiming that the First Amendment and the reporter's privilege exempts it from so doing. Because neither FMC, the district court nor this court had or has any way of knowing exactly what documents ABC possesses, we believe the burden should be on ABC, and not FMC, to come forward with evidence that it does not have the originals of the documents pilfered from FMC's files (if this is the case). We are mindful of the First Amendment issues attending such a demonstration; hence we leave it to the district court, and to the parties, to decide what form ABC's proof may take. The district court is welcome, for example, to undertake an *in camera* inspection of the documents. If, on the other hand, FMC is willing to accept copies of the documents, ABC should not have to submit to such a procedure. We leave the precise resolution of this matter to the district court. ABC is not, however, to be allowed to flout well-accepted property and tort law in the name of the First Amendment—especially since procedures are available that should adequately protect ABC's investigative activities. We now move on to address the issue whether ABC must return copies of FMC's own documents to FMC if the only documents ABC possesses are *merely duplicates* of the documents removed from FMC's files.

As the district court correctly noted, "the receipt of copies of documents, rather than the documents themselves, should not ordinarily give rise to a claim for conversion." March 8, 1989 Memorandum Opinion and Order at 2. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *Pearson v. Dodd*, 410 F.2d 701, 706–08 (D.C.Cir.), *cert. denied*, 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969). The reason for this rule is that the possession of copies of documents—as opposed to the documents themselves—does not amount to an interference with the owner's property sufficient to constitute conversion. *Harper & Row*, 723 F.2d at 201. In

cases where the alleged converter has only a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived of the use of his property. The only rub is that someone else is using it as well.

But this case is different. Here, the owner, FMC, does not have a copy of the documents known to be in the possession of the alleged converter, ABC. Hence, ABC is not only an additional user of the property but has deprived FMC of any use of its documents. ABC argues, however, that *Harper & Row* and *Pearson* actually cut against FMC's claim because those cases focus upon the "property" alleged to have been converted and not upon the "effect of the deprivation" on the plaintiff. Appellee's Brief at 8. We disagree.

The gravamen of the tort of conversion is the *deprivation* of the possession or use of one's property. *Prosser & Keeton on the Law of Torts* ch. 3, § 15, at 102 (5th ed. 1984) ("The gist of conversion is the *interference* with *control* of the property.") (emphasis supplied). We read both *Harper & Row* and *Pearson* to be consistent with this theme. The holdings in both cases are premised upon the extent of the property deprivation involved. *See Harper & Row*, 723 F.2d at 201 (conversion requires more than a "temporary interference with property rights"); *Pearson*, 410 F.2d at 706 ("[w]here the intermeddling falls short of the complete or very substantial deprivation of possessory rights in the property, the tort committed is not conversion"). Thus *Harper & Row* and *Pearson* are clearly distinguishable from the present case. Where, as here, the owner does not have the originals and the alleged converter has the originals *or* the only known copies of the originals, the retention of such property—to the exclusion of the owner—constitutes conversion.

In such a case the copies become the functional equivalents of the originals. Because ABC has refused to return copies of the documents that FMC has a right to use, ABC's retention of the documents amounts to the exercise of unlawful dominion over them. Hence, ABC is chargeable with conversion.

ABC also contends that it is not liable to FMC for conversion because a "third party voluntarily provided copies of [FMC's] documents to ABC and no ABC employee or agent ever possessed [FMC's] original documents." Appellee's Brief at 8. Even assuming that this is true, it would not help ABC's case. For purposes of conversion, it is not the intent to steal or pilfer property that matters, but rather "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Prosser & Keeton on the Law of Torts* ch. 3, § 15, at 92 (footnote omitted). Accordingly, a "bona fide purchaser of goods from one who has stolen them, or who merely has no power to transfer them, becomes a converter when the purchaser takes possession to complete the transaction." *Id.* at 93–94. Hence, it is of no moment that ABC is not directly responsible for the loss of FMC's documents. What is important is that ABC now possesses either the originals or copies of FMC's documents that FMC no longer has and refuses to return them.

■ In addition, we pause to note that, even if the retention of mere copies of documents did not constitute conversion, we think that FMC would also have a valid claim for conversion on the grounds that ABC is essentially depriving FMC of the *use* of its own business information. ABC contends that the type of business information lost by FMC does not constitute "protectible property" for purposes of conversion. Appellee's Brief at 10. Again we disagree with ABC's argument.

The tort of conversion has had a tortured history.

> [The] conception that an action for conversion lies only for tangible property capable of being identified and taken into actual possession is based on a fiction on which the action of trover was founded— namely, that the defendant had found the property of another which was lost—and that such conception has become, in the progress of law, an unmeaning thing

which has been discarded by most courts....

Annotation, *Nature of Property or Rights Other than Tangible Chattels Which May Be Subject of Conversion*, 44 A.L.R.2d 927, 929 (1955). As Prosser and Keeton have noted, however, "[t]here is perhaps no very valid and essential reason why there might not be conversion" of intangible property. *Prosser & Keeton on the Law of Torts* ch. 3, § 15, at 92. Indeed, the Supreme Court has recently held that " '[c]onfidential information acquired or compiled by a corporation in the course and conduct of its business is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy.' " *Carpenter v. United States*, 484 U.S. 19, 26, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987) (quoting from 3 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 857.1, at 260 (rev. ed. 1986) (footnote omitted)). ABC would have us believe that the only business information in which a company can acquire a protectible property interest is information which is sold as a commodity. But, the Supreme Court's opinion in *Carpenter* is not so limited. Indeed, the Supreme Court's approach is consistent with what appears to be the modern trend of state law in protecting against the misuse of confidential business information through conversion actions. *See, e.g., Annis v. Tomberlin & Shelnutt Associates, Inc.*, 195 Ga.App. 27, 392 S.E.2d 717 (1990) (affirming jury verdict for conversion of confidential information); *Conant v. Karris*, 165 Ill.App.3d 783, 117 Ill.Dec. 406, 520 N.E.2d 757 (1987) (upholding a claim for the conversion of confidential information); *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 489 N.E.2d 185 (1986) (upholding damages award for conversion of circulation list copy).

ABC argues that, even if FMC is found to have set forth a valid claim for conversion, FMC should still be precluded from obtaining copies of its documents from ABC because the First Amendment protects ABC's investigative activities. More specifically, ABC contends that the "adoption of FMC's theory would cripple all investigative reporting concerning the defense industry (or any other industry for that matter)." Appellee's Brief at 24. We think that ABC's contention cuts much too broadly. We are not allowing FMC's conversion claim to be used as a "tool[ ] for the reproduction or disclosure of any document that a particular contractor does not want the public to see." *Id.* Rather, we are simply allowing FMC to obtain copies of its own information, information which has apparently been stolen from it and which it needs in order to comply with its government contracts.[3] ABC is free to retain copies of any of FMC's documents in its possession (and to disseminate any information contained in them) in the name of the First Amendment. Moreover, ABC is in no way being punished for the dissemination of FMC's information. It is merely being required to make copies of documents it refuses to return.

On a related ground, ABC argues that Illinois law provides an independent statutory, as opposed to constitutional, basis for protecting its "source material." ABC believes that the Illinois "Reporter's Privilege" shields it from having to return copies of FMC's documents to FMC. Section 1 of this provision (Ill.Rev.Stat., ch. 51, para. 111 (1979)), however, provides, in part, that: "No court may compel any person to disclose the source of any information obtained by a reporter during the course of his employment except as provided in this Act." Since FMC in this case is seeking the return of its property and is not attempting to ascertain ABC's sources,

---

**3.** For similar reasons, we reject ABC's argument that the "specter" of conversion suits like this "would saddle those investigating matters of public concern with an impossible dilemma: either wait for the subjects of news reports to voluntarily disclose their challenged conduct, or risk lawsuits and liability for damages from disclosure of ... 'confidential business information.' " Appellee's Brief at 24. Even ABC must realize that this argument is extreme. ABC remains free to report whatever it deems fitting. It must, however, return documents that rightfully belong to another or make copies of documents that the owner no longer has access to.

the Illinois shield statute is inapplicable to this case.[4]

### C. The Misappropriation of Confidential Business Information

■ FMC has not stated a valid claim for the misappropriation of confidential business information under California law. The thrust of the misappropriation tort is the inequitable pirating of the fruits of another's labor and then passing these fruits off as one's own. *See, e.g., KGB, Inc. v. Giannoulas*, 104 Cal.App.3d 844, 164 Cal.Rptr. 571 (1980). As the district court correctly noted in connection with Illinois law (which is largely the same as California law on this point), ABC is not in competition with FMC. Rather, ABC is simply a news organization in the business of reporting information. Hence, the normal policy concerns behind a claim for the misappropriation of confidential business information are not implicated in this case. Although it may be true that FMC has suffered some economic harm from the loss and exposure of its military and pricing information on the BFV, the fact remains that ABC is not a fiduciary of or competitor with FMC. FMC has therefore failed to state a valid claim for the misappropriation of confidential business information.[5] Moreover, a contrary holding would certainly raise important First Amendment problems.

### III. CONCLUSION

During the course of a news investigation, ABC acquired either the originals or copies of documents belonging to FMC. Because these documents were stolen from its files, FMC no longer has the information contained in these documents, information it needs to comply with government contracts. ABC has refused to return FMC's documents or the information contained in those documents, forcing FMC to bring suit over what amounts to four pieces of paper. We hold that ABC's refusal to return the documents or copies of the documents, under the unique circumstances presented by this case, constitutes conversion. Because of the delicate First Amendment principles attending this case, we are leaving the precise implementation of our holding to be overseen by the district court. Because ABC is not a competitor or fiduciary of FMC, the dismissal of FMC's claim for the misappropriation of its confidential business information is affirmed. This case is accordingly AFFIRMED in part and REVERSED and REMANDED in part for proceedings not inconsistent with this opinion. ABC shall bear the costs of this appeal.

---

**4.** If ABC can legitimately show that, by returning copies of FMC's documents, it will be in danger of revealing its sources, ABC should be allowed to furnish FMC with its information in some way that will protect its sources. We leave the precise determination as to whether ABC may be compromising its sources and what form any return of documents should take to the district court.

**5.** ABC argues that, even if FMC were to state a valid claim for misappropriation, such a claim would be preempted by federal copyright law. In the light of the conclusion drawn above, however, we need not address this aspect of ABC's defense.