2024 IL App (3d) 230333

Opinion filed December 31, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| Z'S IT CONSULTING SERVICES, INC. and GEORGE ZABRAN, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiffs and Counterdefendants-Appellees, | ) ) | |
| | ) | Appeal No. 3-23-0333 |
| | ) | Circuit No. 20-L-1396 |
| v. | ) | |
| | ) | Honorable |
| HUNT LAW GROUP, LLC, | ) ) | Timothy J. McJoynt, Judge, Presiding. |
| Defendant and Counterplaintiff-Appellant. | ) ) | |

_____

JUSTICE ALBRECHT delivered the judgment of the court, with opinion.
Justice Anderson concurred in the judgment and opinion.
Justice Anderson also specially concurred, with opinion.
Justice Holdridge dissented, with opinion.

_____

**OPINION**

¶ 1        This appeal concerns a counterclaim for conversion, stemming from a breach of contract

lawsuit, and requires analysis of a gateway distinction that normally, in Illinois, intangible

property cannot support a cognizable civil conversion claim. The Hunt Law Group, LLC (Hunt),

filed a counterclaim alleging conversion against Z's IT Consulting Services, Inc. (Z's), and

George Zabran for the withholding of passwords and access codes necessary to gain entry to

Hunt's IT system. The circuit court dismissed Hunt's third amended counterclaim because the

converted assets were intangible and, in the court's view, could not support a conversion action in Illinois. In its appeal, Hunt contends that (1) the passwords and access codes are real and tangible and, alternatively, (2) that conversion law has expanded to encompass the type of property at issue. We affirm.

¶ 2                                        I. BACKGROUND

¶ 3        On December 2, 2020, Z's filed a complaint against Hunt, sounding in breach of contract. According to the pleading, Z's provided Hunt with monthly information technology maintenance and support beginning in 2005 and supplied technical upgrades to the firm on an as needed basis. The lawsuit concerned Hunt's alleged failure and refusal to pay for certain IT upgrades Z's furnished the firm in 2020.

¶ 4        On February 26, 2021, Hunt filed an answer to Z's complaint and counterclaimed for conversion. Z's moved to dismiss the counterclaim, which was granted without prejudice on June 8, 2021. On July 6, 2021, Hunt repled its claim against Z's in an amended counterclaim for conversion and, the next day, separately filed a third-party complaint against Zabran, Z's principal, which alleged he converted information from Hunt in his individual capacity. Soon after, Z's filed a verified amended complaint adding Zabran as a party plaintiff. The circuit court subsequently granted both Z's and Zabran's respective motions to dismiss Hunt's first amended counterclaim without prejudice. Plaintiffs then successfully moved to dismiss Hunt's second amended counterclaim against them.

¶ 5        Thereafter, Hunt filed its third amended counterclaim for conversion on March 2, 2023. Count I alleged that when the law firm formed in 2005, it retained Zabran as an IT consultant. Zabran was responsible for creating the IT infrastructure for the firm, including its domain name creation, server setup, and e-mail system foundation. Zabran supplied the hardware and software

2

necessary to support Hunt's IT system and protected the computer system with passwords and access codes. Hunt claimed that Zabran withheld the passwords and access codes in 2005 and 2006, despite its request for the same.

¶ 6    A billing dispute for services ensued. After a deterioration of the working relationship between Hunt and Zabran, Hunt's employees allegedly requested the passwords and access codes from Zabran in 2020, to no avail. Hunt discharged Zabran on October 24, 2020. The counterclaim further alleged that "[u]pon information and belief" Zabran "deleted sensitive information from" Hunt's servers on that date. It claimed that the passwords and access codes were taken in tangible and intangible form or, alternatively, that Zabran converted the information "from intangible property to tangible property." Zabran sent a piecemeal list of the passwords and access codes to Hunt's counsel on October 28, 2020, and "provided additional data regarding the access codes and passwords" on November 11, 2020.

¶ 7    The counterclaim alleged that, as a result of this delay, the firm endured scanner failures and the inability to access its e-mail filters, domain registration, and phone systems necessitating the retention of a new IT consultant at the cost of approximately $6300. Count II alleged the same allegations against Z's, asserting that Zabran was acting at its direction.

¶ 8    On April 28, 2023, plaintiffs brought a motion to strike and dismiss Hunt's third amended counterclaim. Plaintiffs' motion attacked the legal sufficiency of Hunt's counterclaim, based on deficiencies in the pleading pursuant to section 2-615 of the Code of Civil Procedure, but also asserted that the alleged converted information is intangible and therefore cannot support a conversion action.

¶ 9    On June 28, 2023, after briefing, the court heard argument concerning plaintiffs' motion to strike and dismiss. When deciding the motion, the court focused on the requirement that the

passwords and access codes constitute tangible assets, as is required for a claim of conversion in Illinois. Upon reflection, the court held that "the assets claimed to be removed are intangible assets" and granted plaintiffs' motion to strike and dismiss with prejudice in a contemporaneous written order.

¶ 10        Hunt now appeals.

¶ 11                                II. ANALYSIS

¶ 12        On appeal, Hunt provides two arguments. First, it contends that passwords and access codes are real and tangible and therefore its counterclaim for conversion lies. It further argues that the format of the information at issue should not be outcome determinative, as it bears little relation to whether its owner has a right to possess it. Second, Hunt claims that modern business and financial practices have changed so dramatically that the law of conversion should evolve to include digital data, including the passwords and access codes at issue here. Z's and Zabran respond that the passwords and access codes are nonactionable for a conversion claim under Illinois law, and in the alternative, other pleading defects warrant the counterclaim's dismissal.

¶ 13        We review a circuit court's ruling on a motion to dismiss under a *de novo* standard of review. *Bouton v. Bailie*, 2014 IL App (3d) 130406, ¶ 7. Conversion is defined as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A (1965). " 'The essence of an action for conversion is the wrongful deprivation of property from the person entitled to possession.' " *In re Thebus*, 108 Ill. 2d 255, 260 (1985) (quoting *Farns Associates Inc. v. Sternback*, 77 Ill. App. 3d 249, 252 (1979)). To state a claim for civil conversion, a plaintiff "must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate

4

possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998).

¶ 14    For the tort of conversion to lie, the property at issue must be the type subject to a colorable conversion claim. See *Janes v. First Federal Savings & Loan Ass'n of Berwyn*, 11 Ill. App. 3d 631, 637 (1973), *rev'd in part on other grounds*, 57 Ill. 2d 398 (1974). Over time, the definition of the type of property necessary to state a cognizable claim for conversion has both transformed and diverged among jurisdictions. As the Restatement provides, "the modern action of conversion has undergone a slow process of extension," beyond the narrow limitations of trover's "fiction" that prevented recovery of "any property which could not be lost and found." Restatement (Second) of Torts § 242 cmt. d (1965). Although the type of property subject to conversion has generally expanded, jurisdictions have not yet arrived at a consensus. Jurisdictions continue to vary greatly on which, if any, intangible property rights are actionable. See Val D. Ricks, *The Conversion of Intangible Property: Bursting the Ancient Trover Bottle with New Wine*, 1991 B.Y.U. L. REV. 1681, 1711-12 (1991); see also Courtney W. Franks, *Analyzing the Urge to Merge: Conversion of Intangible Property and the Merger Doctrine in the Wake of* Kremen v. Cohen, 42 HOUS. L. REV. 489, 501 (2005).

¶ 15    Some states abide by the tort's historical limitation and only permit conversion claims over tangible personal property.[1] Conversely, Hunt directs our attention to other states that have greatly expanded the tort's bounds by dismantling the intangible property bar. Such is the case in California, which recognizes conversion claims as actionable, even for "the unauthorized taking of an intangible property interest not merged with or reflected in tangible properly [*sic*]." *Welco Electronics, Inc. v. Mora*, 166 Cal. Rptr. 3d 877, 883 (Ct. App. 2014). The California Supreme Court, one decision explained, "rejected the common law rule that only a tangible property interest can be unlawfully converted." *Fremont Indemnity Co. v. Fremont General Corp.*, 55 Cal. Rptr. 3d 621, 642 (Ct. App. 2007) (referring to *Payne v. Elliot*, 54 Cal. 339 (1880)); see *Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2003) (commenting that "[California] courts routinely apply the tort [of conversion] to intangibles without inquiring whether they are merged in a document").

¶ 16    A number of jurisdictions abide by the Restatement of Torts, which outlines the following test to balance intangible property with the tort of conversion:

> "(1) Where there is conversion of a document in which intangible rights are merged, the damages include the value of such rights.

---

[1]For example, neither Oklahoma nor Tennessee recognizes intangible property as convertible. In Oklahoma, the "general rule *** is that only *tangible personal property* may be converted." (Emphasis in original.) *Shebester v. Triple Crown Insurers*, 1992 OK 20, ¶ 14, 826 P.2d 603; *American Biomedical Group, Inc. v. Techtrol, Inc.*, 2016 OK 55, ¶ 13, 374 P.3d 820. But see *Capps v. Vasey Bros.*, 1910 OK 172, ¶ 2, 101 P. 1043 (ruling plaintiffs' action for conversion over promissory note survived general demurrer). According to the Supreme Court of Tennessee, "Tennessee law does not recognize claims for conversion of intangible property rights." *Family Trust Services LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 307 (Tenn. 2024). This is not to say that intangible rights are wholly unprotected from tort in these jurisdictions. For example, as the Restatement contemplates, Oklahoma protects the intangible right of business information under a distinct tort. Compare *American Biomedical Group, Inc.*, 2016 OK 55, ¶ 13 ("Oklahoma has recognized the tort of misappropriation of business information, an intangible"), with Restatement (Second) of Torts § 242 cmt. f (1965) (explaining that "nothing that is said in this Section is intended to indicate that in a proper case liability for intentional interference with some other kind of intangible rights may not be found").

6

(2) One who effectively prevents the exercise of intangible rights of the kind customarily merged in a document is subject to a liability similar to that for conversion, even though the document is not itself converted." Restatement (Second) of Torts § 242 (1965).

¶ 17　　　The Restatement identifies typical documents where intangible rights are merged, including "promissory notes, bonds, bills of exchange, share certificates, and warehouse receipts, whether negotiable or non-negotiable," though this list is not all-inclusive. *Id.* cmt. b; Franks, *supra*, at 493. For instance, "some courts" permit conversion claims "where the converted document is not in itself a symbol of the rights in question, but is merely essential to their protection and enforcement, as in the case of account books and receipts" and the property subject to conversion is "evidently undergoing a process of expansion, the ultimate limits of which cannot as yet be determined." Restatement (Second) of Torts § 242 cmt. b (1965).

¶ 18　　　Illinois's civil conversion jurisprudence is consistent with the Restatement, and we presently adhere to its merger limitation. See, *e.g.*, *Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462, 475 (2006) ("[I]ntangible property rights cannot be the subject of conversion unless they are merged into a tangible document over which the alleged tortfeasor exercised dominion or ownership." (citing Restatement (Second) of Torts § 242 (1965))). The leading Illinois Supreme Court case on civil conversion, *In re Thebus*, explained that " '[i]t is ordinarily held *** that an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible.' " *Thebus*, 108 Ill. 2d at 260 (quoting 18 Am. Jur. 2d *Conversion* § 9 (1965)). The *Thebus* court further clarified that the nature of the property at issue "is required to be an identifiable object of property of which the plaintiff was wrongfully deprived." *Id.*

7

¶ 19        Subsequently, a pronouncement by the First District in *Stathis v. Geldermann, Inc.*, 295

Ill. App. 3d 844, 856 (1998), that "parties may recover for conversion of intangible assets"

created some discordance with courts' construction of *Thebus* and muddled what property is

actionable under a civil conversion claim in Illinois. In support of this proposition, *Stathis* cited

*Conant v. Karris*, a case where a real estate developer stated a valid cause of action for

conversion against his broker after the broker shared a copy of the developer's confidential

information with his brother, who then outbid the developer for a commercial property. 165 Ill.

App. 3d 783, 785, 792 (1987) (ruling complaint's allegation that confidential information on a

computer printout taken and shared by developer's real estate broker sufficiently stated a cause

of action for conversion). Notably, the intangible property deemed sufficient to lie in *Conant* was

confidential information reduced—or "merged"—into a computer printout, a tangible document.

*Id.* at 792. In any event, successive appellate opinions have attempted to clarify *Thebus*'s holding

by explaining that a conversion action over intangible property will only lie when such property

is merged or connected with something tangible. See *Film & Tape Works, Inc.*, 368 Ill. App. 3d

at 475; see also *Bilut v. Northwestern University*, 296 Ill. App. 3d 42, 52 (1998) (explaining that

a student's action for conversion against faculty member for plagiarism of ideas from her

research could lie where printed copy of the research constituted tangible property).

¶ 20        With this background, we turn to Hunt's appeal. Its conversion claim may be simply

phrased: whether Zabran's refusal to surrender the passwords and access codes upon Hunt's

employees' demands arose to tortious conduct. Hunt's characterization of the passwords and

access codes as tangible is not a colorable one. Tangible is defined as "[h]aving or possessing

physical form; corporeal" or "[c]apable of being touched and seen; perceptible to the touch;

8

capable of being possessed or realized." Black's Law Dictionary (12th ed. 2024).[2] We are similarly unpersuaded by Hunt's position, taken in its reply brief, that the passwords and access codes were "presumably" reduced to writing. The counterclaim appended a four-page list of passwords and access codes that Zabran purportedly tendered to Hunt on October 28, 2020. Per the pleading, however, the list was provided days after Zabran's discharge but years after Hunt's employees requested the information. It remains unclear whether this list is the exclusive support for Hunt's conversion claim. The counterclaim does not identify in what form Zabran initially converted and withheld the passwords and access codes beyond the conclusory allegations that "[s]uch confidential information" was in both tangible and intangible forms. See *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006) (explaining that plaintiff's burden in a fact-pleading jurisdiction, such as Illinois, is to "allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions [citation]").

¶ 21      Above all, Hunt fails to allege that plaintiffs converted a document in which intangible rights were merged or that plaintiffs prevented the exercise of Hunt's intangible rights that are customarily merged into a document. See Restatement (Second) of Torts § 242 (1965). As mentioned, the Restatement recognizes several documents where intangible rights are capable of merger, such as "promissory notes, bonds, bills of exchange, share certificates, and warehouse receipts, whether negotiable or non-negotiable." *Id.* cmt. b. The commonality between these documents, one Illinois court noted, is "the fact that they are tangible documents containing intangible rights which are easily convertible into tangible assets, not dissimilar to currency." *Film & Tape Works, Inc.*, 368 Ill. App. 3d at 475-76. But see *Kremen*, 337 F.3d at 1034 n.11

---

[2]Black's Law's third definition of the word "tangible," "[c]apable of being understood by the mind," is not germane to our discussion. See Black's Law Dictionary (12th ed. 2024).

(disputing the requirement that intangibles must be incorporated into a tangible document for the merger doctrine to apply, as the Restatement only identifies "document" and not a *tangible* document). The passwords and access codes grant entry to Hunt's IT system. Therefore, at issue is personal property (the passwords and access codes) and a property right (the unfettered access to one's IT system), neither of which are tangible nor represented by or connected with something tangible. See *Thebus*, 108 Ill. 2d at 260. As such, Hunt fails to state a valid claim for conversion under Illinois law.

¶ 22     A significant period of time has elapsed since our supreme court last substantively discussed the confines of civil conversion.[3] See *Thebus*, 108 Ill. 2d at 259-60. Even before *Thebus*, other jurisdictions began tailoring the tort for the modern age. See *National Surety Corp. v. Applied Systems, Inc.*, 418 So. 2d 847, 849 (Ala. 1982) (holding that, in certain circumstances, a "computer program *** can be the subject of conversion"). A line of more recent cases extended the tort to other intangible property prevalent in the Information Age, including source code (*Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 910 (D. Minn. 2014) (applying Missouri law)), domain names (*Kremen*, 337 F.3d at 1033-34 (applying California law)), and electronically stored records (*Thyroff v. Nationwide Mutual Insurance Co.*, 864 N.E.2d 1272, 1278 (N.Y. 2007)). While these cases offer compelling reasons to thoughtfully review the tort's historical constraints, the property in this matter does not warrant divergence. Here, the passwords and access codes are disconnected from the information on Hunt's IT servers, which include the e-mail filters, domain registration, and phone systems from which Hunt was

---

[3]In 2013, our supreme court stated "at common law, not all types of property are subject to being converted" indicating some limitations remain in Illinois over the type of property actionable for a civil conversion claim. *In re Karavidas*, 2013 IL 115767, ¶ 65. That case, a review of an attorney disciplinary action, was decided on breach of fiduciary duty grounds making the court's comments on conversion *dicta*. *Id.* ¶ 66.

allegedly deprived access. While passwords and access codes are required to access Hunt's IT systems, they bear no relation to any actionable intangible rights. Passwords and access codes do not reflect the protected interests stored within Hunt's IT system, as distinguished from research ideas reduced to written form (*Bilut*, 296 Ill. App. 3d at 52), confidential bidding information reflected in a computer printout (*Conant*, 165 Ill. App. 3d at 786), or even hard drives containing a collection of business and personal information (*Thyroff*, 864 N.E.2d at 1273). Any intangible rights within Hunt's IT system are not "merged" into any "document" Zabran is alleged to have converted. Assuming *arguendo* that Zabran converted an actionable document with the passwords and access codes, it is not a document in which Hunt's intangible rights were merged, and Zabran did not prevent the "exercise of intangible rights of the kind customarily merged in a document." Therefore, Hunt's claim fails. Restatement (Second) of Torts § 242 (1965).

¶ 23 In essence, Hunt requests that this court note extra-jurisdictional developments, divorce itself from prior Illinois case law, and expand the type of property that is subject to a conversion claim in this jurisdiction. Whether the bar on intangible property recovery for conversion claims is a limitation that is appropriate in light of the proliferation of intangible rights in the modern technological age is a worthwhile consideration. For years, this issue has been the topic of scholarly discourse. See, *e.g.*, Prosser & Keeton on the Law of Torts, § 15 (W. Page Keeton *et al.* eds., 5th ed. 1984) ("There is perhaps no very valid and essential reason why there might not be conversion of *** 'any species of personal property which is the subject of private ownership.' "). Whether intangible property rights warrant the creation of a new framework of tort or if the protections against the tort itself should be expanded within this jurisdiction are questions better addressed by our legislature and supreme court, respectively. See *id.* (advocating for the fashioning of other remedies to protect against the mistreatment of intangible values). But

11

see Restatement (Second) of Torts § 242 cmt. e (1965) (stating there is "very little practical importance whether the tort is called conversion, or a similar tort with another name" as "[i]n either case the recovery is for the full value of the intangible right so appropriated"). Because we affirm the circuit court's dismissal of the counterclaim for failure to state a cognizable conversion claim, we need not address plaintiffs' assertion that the counterclaim possessed additional pleading defects.

¶ 24                                    III. CONCLUSION

¶ 25        The judgment of the circuit court of Du Page County is affirmed.

¶ 26        Affirmed.

¶ 27        JUSTICE ANDERSON, specially concurring:

¶ 28        I agree with the dissent's conclusion that the misappropriation of passwords and access codes ought to support a conversion claim. There is no meaningful difference here between a tangible key and digital passcode. However, I do not agree that Illinois law recognizes such a claim, and I do not believe it is within our province to recognize one under these circumstances.

¶ 29        To be sure, the legal community has struggled to adapt traditional concepts to a digital world, and this issue represents part of that struggle. See, *e.g.*, *Ogbolumani v. Young*, 2015 IL App (1st) 141930-U, ¶ 33 (finding that digital files contained on a USB drive are "not tangible personal property" that could support a conversion claim).[4]

---

[4]I acknowledge that *Ogbolumani* is a Rule 23 decision that predates the changes to circumstances in which Rule 23 cases may be cited. However, the former prohibition on the use of Rule 23 dispositions applied, under its plain terms, to *parties* and not courts. *Byrne v. Hayes Beer Distributing Co.*, 2018 IL App (1st) 172612, ¶ 22.

¶ 30       However, our analysis is made in the context of the Illinois Supreme Court's ruling in *Thebus*, 108 Ill. 2d at 260. In that case, the court quoted, with approval, the conversion chapter of the American Jurisprudence treatise, for the proposition that: "It is ordinarily held *** that an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible ***." 18 Am. Jur. 2d *Conversion* § 9 (1965).

¶ 31       Given the limitations on conversion claims that were recognized in *Thebus*, I believe it is our supreme court's prerogative, and not ours, to further open the umbrella of claims that fall under the tort of conversion.

¶ 32       JUSTICE HOLDRIDGE, dissenting:

¶ 33       I respectfully dissent from the majority's holding in this case. As the majority has pointed out, Illinois has precedent for finding that parties may recover for conversion of intangible assets, and the boundaries for finding when intangible assets are capable of merger with something tangible have been stretched since *Thebus*. *Supra* ¶¶ 17-19.

¶ 34       Other jurisdictions, however, have removed the merger requirement and taken the next logical step in finding that intangible property can be converted without any caveats. *Supra* ¶¶ 15, 22. Such previously listed cases include *National Surety Corp. v. Applied Systems, Inc.*, 418 So. 2d 847 (Ala. 1982), *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890 (D. Minn. 2014), and *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003), and I find that they are analogous to the present case and better decided.

¶ 35       If this case involved physical keys instead of passwords that prevented Hunt from accessing its data, Z's withholding of the keys would unquestionably be conversion. The same could be found if there had been computer printouts of the passwords withheld by Z's. A

13

password is simply a digital key. Merely because the password in the present case lacks a

tangible element, it should not prevent what would otherwise be clear conversion.

*Z's IT Consulting Services, Inc. v. Hunt Law Group, LLC*, 2024 IL App (3d) 230333

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 20-L-1396; the Hon. Timothy J. McJoynt, Judge, presiding. |
| **Attorneys for Appellant:** | Michael W. Rathsack, of Park Ridge, for appellant. |
| **Attorneys for Appellee:** | Lawrence A. Stein, of Lawrence A. Stein LLC, of Wheaton, for appellees. |