Cheshire
No. 80-035

## LFC Leasing and Financial Corporation

### v.

## Ashuelot National Bank

September 17, 1980

*Bergevin, Cloutier & D'Amours* and *Richard L. Rodman*, of Manchester, by brief for the plaintiff.

*Goodnow, Arwe, Ayer, Prigge & Gardner*, of Keene, by brief for the defendant.

PER CURIAM. The principal issue in this case is whether the Trial Court (*DiClerico*, J.) properly granted the defendant's motion for nonsuit in an action to recover damages for the defendant's alleged conversion of three copying machines. The standard of review is whether the evidence and all reasonable inferences therefrom, construed most favorably to the plaintiff, would permit the trier of fact to find in its favor. *Muzzy v. Rockingham County Trust Co.*, 113 N.H. 520, 309 A.2d 893 (1973).

The plaintiff, LFC Leasing and Financial Corporation (hereinafter LFC), is a corporation with headquarters in Boston, Massachusetts, engaged in the leasing of business equipment. Chase Office Products, Inc. (hereinafter Chase) with headquarters in Keene had customers who required copying machines, but did not wish to purchase them. By agreement with LFC, Chase referred its customers to plaintiff who purchased from Chase the desired machines and then leased them to Chase's customers. The agreement between LFC and Chase included an understanding that Chase would assist the plaintiff in transporting the machines and in remarketing them when the leases terminated.

The leases on these three copying machines, owned and leased by LFC, were terminated in May or June 1976. They were returned to Chase awaiting transfer to Rhode Island for remarketing by

plaintiff through a dealer there. On July 9, 1976, LFC sent a letter, with proof of ownership, to the defendant bank demanding the immediate release of the three machines. It was received on July 12 by the bank. On July 14, 1976, LFC sent a trucker to Chase to pick up these machines. The trucker had proof of LFC's title thereto and a letter authorizing him to pick them up.

The machines were not turned over to the trucker. He was told to see the president of the defendant, Ashuelot National Bank (hereinafter bank), and the bank's attorney. The attorney informed him that the defendant had a security interest in Chase's inventory and that the bank was presently in the process of taking inventory due to an anticipated bankruptcy petition. He also stated that he would not authorize the release of the machines until all questions regarding the bank's security interests were clarified. The attorney would not state where the machines were stored or the date they would be released.

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Muzzy v. Rockingham County Trust Co.*, 113 N.H. 520, 523, 309 A.2d 893, 894 (1973); *Pleasant Valley Campground v. Rood*, 120 N.H. 86, 411 A.2d 1104 (1980); RESTATEMENT (SECOND) TORTS § 222A(1) (1965). The interference must be of such seriousness as to justify the imposition of a forced judicial sale on the defendant. W. PROSSER, LAW OF TORTS § 15 at 80, 81 (4th ed. 1971). Among the factors to be considered in determining the seriousness of the interference and the justice of requiring the defendant to pay the full value are: the defendant's good faith and the extent and duration of defendant's exercise of dominion or control over the machines in question. RESTATEMENT (SECOND) TORTS § 222A(2)(a) and (c).

There is no conversion if the refusal is based upon a reasonable qualification or requirement, is stated in good faith, and is made known to the owner. Such refusal is known as a qualified refusal. 18 AM. JUR. 2d *Conversion* § 44 (1965). It follows that not every failure to deliver upon demand will constitute a conversion. On the contrary, a qualified refusal for a reasonable purpose and for a reasonable length of time is not a conversion. W. PROSSER, LAW OF TORTS § 15 at 90 (4th ed. 1971). *See Hett v. Boston & M. R.R.*, 69 N.H. 139, 44 A. 910 (1897).

The following evidence is uncontradicted. The first demand made on the defendant bank for the three copiers was by a letter

from the plaintiff LFC which it received on July 12, 1976. At that time, Chase's inventory and accounts receivable were under pledge to the defendant bank as collateral for a loan made to Chase by the defendant. A "horrendous situation" then existed at Chase insofar as the records and leases were concerned, as testified by the person in charge. Chase had had leasing arrangements with a number of firms but apparently had shifted machines among customers without reference to leases or ownership.

On July 14, 1976, a trucker sent by LFC to pick up the copiers did not receive them at Chase and was directed to the attorney for the defendant bank. The attorney told the trucker that the bank had a security interest in some Chase equipment and that the copiers would not be released until the bank's security interest had been clarified. In a letter to LFC dated August 2, 1976, the bank attorney notified it that two of the machines were released. The third copier was released by letter dated August 24, 1976.

■ Upon the evidence presented by the plaintiff when it rested its case, construed most favorably to it, the trier of fact could not lawfully conclude other than that the refusal of the bank to turn over the copiers constituted a qualified refusal, for a reasonable purpose, and for a reasonable length of time. *Stahl v. Railroad*, 71 N.H. 57, 51 A. 176 (1901); W. PROSSER, LAW OF TORTS § 15 at 90 (4th ed. 1971).

*Plaintiff's exceptions overruled; affirmed.*