**Basil W. SMITH, Jr.,**
**Plaintiff–Appellant**
**Cross–Appellee,**

v.

**SNAP–ON TOOLS CORPORATION,**
**Defendant–Appellee**
**Cross–Appellant.**

**No. 86–4943.**

United States Court of Appeals,
Fifth Circuit.

Dec. 11, 1987.
Rehearing Denied Jan. 12, 1988.

Orma R. Smith, Jr., Smith, Ross & Trapp, Corinth, Miss., for Smith.

L.F. Sams, Jr., W. Scott Collins, Mitchell, McNutt, Bush, LaGrone & Sams, Tupelo, Miss., for Snap–On Tools Corp.

Before CLARK, Chief Judge, GEE, and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Basil Smith, a resident of Mississippi, made a ratchet by combining parts of two existing tools. Hoping to see his ratchet made available for sale, he brought it to the attention of Snap–On Tools, Inc., a corporation with its principal place of business in Wisconsin, by showing the ratchet to an independent dealer, then submitting a tool suggestion form to corporate headquarters. Snap–On began manufacturing and selling the ratchet without paying any part of the proceeds to Smith. Smith brought a diversity action against Snap–On, claiming that the ratchet was a trade secret, that he submitted the ratchet in confidence to Snap–On, that Snap–On misappropriated the trade secret, and that Snap–On was liable in damages to him for the misappropriation. The district court, applying Wisconsin law, held that Snap–On had misappropriated Smith's trade secret and awarded Smith damages in the amount of two and one-half percent of Snap–On's gross sales from the ratchet plus pre-judgment interest. Smith appealed the damage award, seeking to recover Snap–On's profits rather than a reasonable royalty. Snap–On cross-appealed, contending that the district court erred 1) in holding that the device was a trade secret; 2) in holding that a confidential relationship existed between Smith and Snap–On; 3) in holding that Smith's claim was not barred by laches or the statute of limitations; 4) in awarding pre-judgment interest; 5) in awarding a reasonable royalty measure of damages for as long as Snap–On manufactured and marketed the tool rather than merely for the period during which Snap–On enjoyed a competitive advantage because it was able to produce the tool before its competitors could duplicate the model they saw on the market. Because the record does not support the finding that there was a confidential relationship between Smith and Snap–On, we reverse.

Wisconsin law prescribes two essential elements in a cause of action for misappropriation of trade secrets: an actual trade secret and a breach of confidence.[1] The essence of the tort of trade secret misappropriation is the inequitable use of the secret.[2] Even when a trade secret exists, a person who learns the secret legitimately, without any duty of confidentiality, is free to use it.[3]

Wisconsin therefore follows trade secrets law as set out in § 757 of the Restatement of Torts.[4] Under the Restatement, "[o]ne who discloses or uses another's trade se-

---

**1.** *Corroon & Black–Rutters & Roberts, Inc. v. Hosch,* 109 Wis.2d 290, 325 N.W.2d 883, 886 (1982); *Abbott Laboratories v. Norse Chemical Corp.,* 33 Wis.2d 445, 147 N.W.2d 529, 533–34 (1967).

**2.** *RTE Corp. v. Coatings, Inc.,* 84 Wis.2d 105, 267 N.W.2d 226, 231 (1978).

**3.** *Id.*

**4.** *Id.; Abbott Laboratories,* 33 Wis.2d 445, 147 N.W.2d at 533–35.

cret, without a privilege to do so, is liable to the other if ... his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him." [5] As the comment to this provision states, the proprietor of a trade secret may not unilaterally create a confidential relationship without the knowledge or consent of the party to whom he discloses the secret.[6] No particular form of notice is necessary, however; the question is whether the recipient of the information knew or should have known that the disclosure was made in confidence.[7]

Smith concedes that he never explicitly requested that his disclosure to Snap–On be held in confidence. Nonetheless, he argues, Snap–On knew or should have known that the disclosure was confidential. According to Smith, a "special relationship" existed between himself and Snap–On, based on the fact that he, as a relatively unsophisticated individual, submitted his invention to Snap–On, a large corporation. Under the circumstances, Smith contends, the manufacturer should have known that he, as the inventor, expected compensation even if he did not request it.

The district court accepted this argument, and found that Snap–On had clothed its independent dealer, Jackie Clark, to whom the disclosure was actually made, with apparent authority to accept tool submission suggestions from people like Smith. Pointing out the discrepancy in the circumstances of Smith, a mechanic with little education, and Snap–On, a large corporation, the court concluded that a special relationship between Smith and Snap–On existed from the time of the initial disclosure to Clark and that Snap–On knew or should have known that an inventor does not submit his invention to a manufacturer to appropriate without compensating the inventor.

This does not reflect Wisconsin law. The Supreme Court of Wisconsin has held that, when parties are dealing at arm's length, one party's disclosure of an alleged trade secret to another does not automatically create a confidential relationship.[8] Although the case in which the Supreme Court of Wisconsin announced this holding involved two corporations,[9] we see no reason to believe that it would have applied a different rule if the inventor had been an individual rather than a corporation.

Under certain circumstances, courts have found liability for misappropriation of trade secrets in cases involving implied confidentiality between an inventor and a manufacturer. When a manufacturer has actively solicited disclosure from an inventor, then made use of the disclosed material, the manufacturer may be liable for use or disclosure of the secret in the absence of any expressed understanding as to confidentiality.[10] In this case, however, Smith disclosed the invention on his own initiative, without any prompting from Snap–On. Alternatively, courts have imposed liability when the disclosing inventor did not specifically request confidentiality from the manufacturer, but did make clear that the disclosure was intended as part of a course of negotiations aimed at creating a licensing agreement or entering into a similar business transaction.[11] These cases are also distinguishable because Smith did not indicate that he wanted any pecuniary recompense for his suggestion. In fact, Smith testified that he did not mention compensation to Jackie Clark because he did not believe Clark was authorized to discuss such matters. When Smith sent Snap–On a tool suggestion report describing the ratchet shortly after the initial disclosure

5.  Restatement of Torts § 757(b) (1939).

6.  *Id.* comment j.

7.  *RTE,* 84 Wis.2d 105, 267 N.W.2d at 232; Restatement of Torts § 757(b) comment j (1939).

8.  *RTE,* 84 Wis.2d 105, 267 N.W.2d at 232.

9.  *Id.,* 267 N.W.2d at 228.

10.  *Smith v. Dravo Corp.,* 203 F.2d 369, 372, 376 (7th Cir.1953).

11.  *Id.; Schreyer v. Casco Prods. Corp.,* 190 F.2d 921, 924 (2d Cir.1951), *cert. denied,* 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952); *Hoeltke v. C.M. Kemp Mfg. Co.,* 80 F.2d 912, 922–23 (4th Cir.1935), *cert. denied,* 298 U.S. 673, 56 S.Ct. 938, 80 L.Ed. 1395 (1936).

to Clark, he did not in any way indicate that he wanted compensation, and indeed wrote on the suggestion form, "I would like to be able to buy a nice new shiney [sic] one from the Snap–On truck." In none of his dealings with Snap–On over the next two years did Smith ever request confidentiality or indicate that he expected or desired any commercial arrangement based on his submission of the ratchet suggestion to Snap–On.

In February, 1978, more than two years after Smith showed the ratchet to Clark, Smith's lawyer sent a letter to the supervisor of Snap–On's Product Management Division in which he asked that Smith receive compensation. Reliance on confidentiality, however, must exist at the time the disclosure is made. An attempt to establish a special relationship long after an initial disclosure comes too late.[12]

Because there was no confidential relationship between Smith and Snap–On, Snap–On violated no obligation to Smith by manufacturing the ratchet. We therefore REVERSE.

12. *RTE,* 84 Wis.2d 105, 267 N.W.2d at 233.