Curtis Mfg. v. Plastic-Clip          CV-89-430-SD  09/14/95 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Curtis Manufacturing Company, Inc.

       v.                                                  Civil No. 89-430-SD

Plasti-Clip Corporation;
Daniel Faneuf


Plasti-Clip Corporation;
Daniel Faneuf

       v.                                                  Civil No. 92-360-SD

Thomas. W. Judd


O R D E R


This hotly contested patent litigation[1] brings before the court a number of post-trial motions, to which the respective opponents have interposed objections.  This order addresses the issues raised by such pleadings.[2]


1.  Renewed Motions of Curtis Manufacturing Co., Inc. (Curtis),

---

[1]In addition to claims grounded on the patent law of the United States as set forth in Title 35, United States Code, there were a number of claims made which were grounded in state law.

[2]Plasti-Clip Corporation (Plasti-Clip) is a small corporation solely owned by Daniel Faneuf (Faneuf), who created it for the purpose of the manufacture and marketing of his invention.

and Thomas W. Judd (Judd) for Judgment as a Matter of Law or, Alternatively, for New Trials or to Alter and Amend Judgment, documents 162, 163[3]

At issue in this litigation were two United States patents: No. 4,277,863 (the '863 patent) issued to Faneuf, and No. 4,902,078 (the '078 patent) issued to Curtis. The '863 patent described a clipping element, the purpose of which was the attaching of an identification badge to an item of clothing. The '078 patent described a clip for holding documents attached to the side of a word processor for the purpose of comparison or copying. The jury found that Curtis infringed the '863 patent. It further found that Faneuf was the sole inventor of the '078 patent and that Judd actively assisted Curtis in the conversion of said patent.[4]

a. Infringement of the '863 Patent

To establish infringement, Faneuf was required to prove by preponderant evidence that every limitation set forth in the asserted claim was found in the accused product, either literally

_____

[3]Document 177 is the Faneuf/Plasti-Clip objection to the Judd motion. Document 178 is the Faneuf/Plasti-Clip objection to the Curtis motion.

[4]Special verdict questions were answered by the jury with respect to each claim.

2

or by a substantial equivalent. <u>Wolverine Worldwide, Inc. v. Nike, Inc.</u>, 38 F.3d 1192, 1196 (Fed. Cir. 1994) (citing <u>Johnston v. Ivac Corp.</u>, 886 F.2d 1574, 1577 (Fed. Cir. 1989)). A "substantial equivalent" could be found to exist if the accused device performed substantially the same function in substantially the same way to achieve substantially the same result. <u>Id.</u> (citing <u>Corning Glass Works v. Sumitomo Elec. USA, Inc.</u>, 868 F.2d 1251, 1260 (Fed. Cir. 1989)).

At trial this judge followed the recent en banc mandate of the Federal Circuit that in a jury trial the trial judge "has the power and obligation to construe as a matter of law the meaning of language used in the patent claim." <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 979 (Fed. Cir. 1995). The jury was so instructed with respect to literal infringement, and they were also instructed as to the doctrine of equivalents.

Curtis contends that the finding that it infringed the '863 patent demonstrates that the jury failed to follow the instructions of the court. Faneuf points not only to the testimony of its own experts, but to that given by Charles Powell, a Curtis expert, as raising factual issues sufficient to support the jury's finding of infringement.

On review of the record, the court is satisfied that the evidence was sufficient to support the jury's finding of

3

infringement of the '863 patent by Curtis.


   b.  Inventorship of the '078 Patent

      On February 20, 1990, the '078 patent issued to Judd and was assigned to Curtis.  At trial, Curtis and Judd contended that Judd was the sole or, at the very least, co-inventor of the "document clip" demonstrated in said patent.  Instructed with respect to all of these claims, the jury found that Faneuf was the sole inventor of the '078 patent.

   Curtis and Judd argue that Faneuf's claims of inventorship fail because they lack corroboration beyond his own oral testimony.  Price v. Symsek, 988 F.2d 1187, 1194 (Fed. Cir. 1983).  But corroborative testimony is not limited to testimony supportive of that given by the inventor, as it may include drawings and prototypes.  Id. at 1195-96.

   Here the jury had before it a written disclosure, a mock prototype, and drawings which had been prepared by Faneuf in May 1989.  These evidentiary items were sufficient to permit the jury to find that Faneuf had carried his burden of proving inventorship by clear and convincing corroborative evidence.  Judd's concept of "slideability" does not serve to overcome the weight of such evidence.

4

c.  Conversion of the '078 Patent

Curtis and Judd suggest that the New Hampshire courts would not find the doctrine of conversion applicable to the intangible ideas expressed in a patent.  The court respectfully disagrees.

The modern trend of state law protects against the misuse of confidential business information through conversion actions. FMC Corporation v. Capital Cities/ABC, Inc., 915 F.2d 300, 305 (7th Cir. 1990) (collecting cases).  Curtis and Judd argue that they could not be liable for conversion because their action in seeking a declaratory judgment as to the validity of the '863 patent amounted to a "qualified refusal".  LFC Leasing & Finan. Corp. v. Ashuelot Nat'l Bank, 120 N.H. 638, 641, 419 A.2d 1120, 1121 (1980).  But the doctrine of "qualified refusal" is grounded on a finding that the reasonable qualification or requirement be stated in good faith or be made known to the owner.  LFC Leasing, supra at 640, 419 A.2d at 1121.  Declaratory judgment directed only to the issues of infringement, validity, or applicability of the '863 patent cannot serve as a "qualified refusal" to the claim of conversion of the '078 patent.

Faneuf's vigorous prosecution of this litigation belies any claim of abandonment, and it is clear he was not required to provoke interference in the Patent and Trademark Office as a condition of his right to recover for conversion.  Richardson v.

5

_Suzuki Motor Co., Ltd._, 868 F.2d 1226, 1250 (Fed. Cir. 1989), _cert. denied_, 493 U.S. 853 (1989).[5]

     d.  Misappropriation of Confidential Information

As requested by Curtis and Judd, the court instructed the jury on the eight elements necessary for a finding on the issue of misappropriation.[6] Suggesting that the jury could not find the presence of such elements, Curtis and Judd argue that the verdict for Faneuf on this issue was in error. Reduced to its basic form, this argument is that there was no notice given of the confidential nature of the disclosure.

Initially and exclusively, the disclosure of the Uni-Clip (a combination of a modified Curtis document holder arm and the Plasti-Clip hanger clip) inspired an indication of enthusiasm for

---

[5]Nor can Judd escape legal fault on the ground that he was not a corporate alter ego or had no personal involvement in the conversion. He not only signed the patent application, declaring under oath that he was the true and sole inventor of the product described in the '078 patent, but he instructed Curtis subordinates in the search for a better clip for the Curtis document holder. The law is clear that corporate officers may be liable for torts in which they personally participate. _United States v. Mottolo_, 629 F. Supp. 56, 60 (D.N.H. 1984).

[6]Those elements were adapted from the jury charge approved by the court in _Tele-Count Engineers, Inc. v. Pacific Tel. & Tel. Co._, 168 Cal App. 3d 455, 462, 214 Cal. Rptr. 276, 279, 226 U.S. Patent Quarterly 790, 792 (Cal. App. 1985).

the idea from Curtis.  No further disclosure of this idea and its subsequent embodiments was made to anyone except as necessary to manufacture the product until Judd and Curtis decided (without knowledge on the part of Faneuf) to apply for the '078 patent. When Faneuf indicated in a later drawing of the disclosed invention that the information disclosed was confidential, neither Curtis nor Judd interposed objection.  Moreover, they never indicated to Faneuf that they previously had the same idea or that there was nothing inventive in Faneuf's disclosure.

Such evidence was sufficient for the jury, following the instructions of the court, to award damages to Faneuf for misappropriation of confidential information.  This case is one of invited, not uninvited, disclosure, and thus serves to trigger the law of misappropriation.  Smith v. Snap-On Tools Corp., 833 F.2d 578, 580 (5th Cir. 1987).  Additionally, the witness Hames, the Curtis employee most directly involved in reviewing the invention with Faneuf, testified that a royalty offer was made to Faneuf in connection therewith.[7]

---

[7]Although Faneuf denied that such royalty offer was made, the jury was at liberty to believe Hames with respect to such issue.

e. Unfair Competition

As there was ample evidence from which the jury could find, as it did, that there was conversion and misappropriation of confidential information, the record was sufficient for the jury to also find unfair competition.

f. Effect of the Curtis Bankruptcy Proceedings

In January 1991, Curtis sought bankruptcy reorganization in the Western District of Texas. Plasti-Clip was notified of the bankruptcy proceedings, but neither filed a proof of claim nor otherwise participated therein. A plan of reorganization for Curtis was confirmed effective April 1, 1993. Curtis now renews its argument, rejected on two prior occasions by the court,[8] that failure of Plasti-Clip to participate in the bankruptcy proceedings bars it from further action on the '078 patent.

Each act of patent infringement constitutes a separate cause of action. See AC Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1031 (Fed. Cir. 1992) (patent infringement is a continuing tort). And "alleged acts of infringement that occur post-confirmation are separate causes of action from those that

_____

[8]See Order of November 21, 1994, at 7-12 (on Curtis/Judd motion for summary judgment), and Order of April 20, 1995, at 24-30 (on motions in limine).

8

occur pre-confirmation, and the former necessarily give rise only to post-confirmation claims." In re Dahlgren Int'l, Inc., 147 B.R. 393, 404 n.16 (N.D. Tex. 1992).

Accordingly, while Faneuf/Plasti-Clip were entitled to recover damages for use by Curtis of the '078 patent clip only from April 1, 1993, the continuous usage from that date distinguishes this case from those upon which Curtis relies. As "section 1141(d)(1)(A) [does] not discharge any claim . . . which arises from the debtor's use . . . post-confirmation," In re Polysat, 152 B.R. 886, 891 (Bankr. E.D. Pa. 1993) (citing Holywell Corp. v. Smith, 503 U.S. 47, 58 (1992)), the "new opportunity" afforded by a bankruptcy proceeding cannot and does not absolve Curtis of liability incurred due to post-confirmation activities. And nowhere in the Bankruptcy Code can there be found a literal prohibition regarding the use of pre-confirmation facts to support a cause of action based on post-confirmation acts.

Moreover, Faneuf/Plasti-Clip were not required to raise their ownership claim in bankruptcy court as "the bankruptcy code cannot be construed to effectively divest someone of property which is rightfully theirs. By operation of [11 U.S.C. §] 541 a debtor can only bring into the estate that property of which he

9

holds both the legal and equitable title," Butts v. Butts (In re Butts), 46 B.R. 292, 297 (Bankr. D.N.D. 1985).  When property is acquired by the debtor through fraud or misrepresentation, "said property becomes estate property because the debtor holds legal title, but . . . all the estate has is legal title if the traceable property would be subject to a constructive trust under non-bankruptcy law."  1 ROBERT E. GINSBERG & ROBERT D. MARTIN, BANKRUPTCY: TEXT, STATUTES, RULES § 5.02[j], at 5-34 (1992).

New Hampshire law imposes a constructive trust in circumstances such as are described in this litigation.  7 CHARLES A. DEGRANDPRE, NEW HAMPSHIRE PRACTICE: WILLS, TRUSTS AND GIFTS § 663, at 271 (1986).  Imposition of such "constructive trust arises at the time of the occurrence of the events giving rise to the duty to reconvey the property."  Central Trust Co. v. Shepard (In re Shepard), 29 B.R. 928, 932 (Bankr. M.D. Fla. 1983); accord City Nat'l Bank v. General Coffee Corp. (In re General Coffee Corp.), 828 F.2d 699, 702 (11th Cir. 1987), cert. denied, 485 U.S. 1007 (1989); Capitol Investors Co. v. Executors of Morrison's Estate, 800 F.2d 424, 427 n.5 (4th Cir. 1986); United States v. Fontana, 528 F. Supp. 137, 146 (S.D.N.Y. 1981).

The bankruptcy proceedings served only to give Curtis legal, not equitable, title to the misappropriated patent, and the

10

equitable interests of Faneuf/Plasti-Clip were neither encumbered, diminished, nor discharged upon confirmation in bankruptcy, thus giving them the right to assert such claims in these proceedings.

Judd raises the argument that the bankruptcy reorganization plan of Curtis purports to discharge all claims Faneuf/Plasti-Clip may have against current or past officers, directors, and employees of Curtis prior to April 1, 1993. This defense surfaces following unobjected-to instructions to the jury that if Judd were found legally at fault, damages could be assessed against him for periods of time both prior to and subsequent to April 1, 1993. Such claim is accordingly deemed waived. Moore v. Murphy, 47 F.3d 8, 11 (1st Cir. 1995); Putnam Resources v. Pateman, 958 F.2d 448, 456 (1st Cir. 1992) (collecting cases).

### g. Assignment of the '078 Patent

As part of the relief afforded Faneuf/Plasti-Clip, the court directed that Curtis assign the '078 patent to them. Curtis and Judd object on the dual grounds that (1) the limitations of this remedy bar its use in the circumstances of this case, and (2) because Faneuf/Curtis have recovered damages for conversion, the assignment is duplicative. The court is unpersuaded by the first

11

of these arguments, but considers that the second argument has considerable merit.

Equitable assignment of a misappropriated patent is not unknown to the law.  See Beecher v. Couture Labs, Inc., 29 F.2d 31 (2d Cir. 1928), aff'd, 279 U.S. 388 (1929); Richardson v. Suzuki Motor Co., Ltd., supra, 868 F.2d at 1250.  The jury here having found conversion of the '078 patent, as well as misappropriation of a confidential idea, the Beecher rationale, all other things being equal, would apply, and the patent would clearly be assignable.

Curtis and Judd point out, however, that the court instructed the jury that, to support a damage award for conversion, it must find the interference with possession to be of such seriousness as to justify the imposition of a forced judicial sale, i.e., the interference with the possession of the '078 patent must be such that Curtis should be forced to purchase the property from Plasti-Clip.  The jury was also instructed that conversion damages included the value of the '078 patent as of the time of the conversion, which equates with the profits Plasti-Clip and/or Mr. Faneuf would have made on the product described in the '078 patent if they had manufactured that product for Curtis.  These instructions directed the jury, as

12

Curtis and Judd here argue, to award as conversion damages the full fair market value of the '078 patent. The generous nature of the conversion damages awarded[9] satisfies the court that the jury followed such instructions.

It is well established that

> "the purpose of damages is to put the injured party as nearly as possible in the same position he would have been had the injury not occurred." Elwood v. Bolte, 119 N.H. 508, 511, 403 A.2d 869, 871 (1979). A plaintiff cannot claim multiple recoveries for the same loss, even though different theories of liability are alleged in the complaint. 22 AM. JUR. 2D *Damages* § 35 (1989).

Phillips v. Verax Corp., 138 N.H. 240, 248, 637 A.2d 906, 912 (1994). See also CPG Products Corp. v. Pegasus Luggage, Inc., 776 F.2d 1007, 1014 n.4 (Fed. Cir. 1985) (no entitlement to dual damages resulting from the same act); Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 786 (1st Cir. 1990).

Accordingly, Faneuf/Plasti-Clip cannot both retain the substantial damage awards for conversion and be granted the additional relief of assignment of the '078 patent. But it is their choice to make as to which of these remedies they desire to have. Chamberlin, supra at 786. Accordingly, Faneuf/Plasti-Clip

---

[9]The jury awarded conversion damages of $200,982 as against Curtis and $645,961 against Judd, for a total of $846,943.

13

are granted a period of fifteen (15) days from the date of this order to file their written election with the clerk of this court.[10]  If they choose damages, the remedy of assignment of the '078 patent will be vacated.  If they choose assignment of the '078 patent, then the court will order remittitur to zero of the conversion damage awards.

### h.  Preemption

Curtis and Judd renew previously rejected arguments to the effect that the state common-law claims of Faneuf/Plasti-Clip are preempted by federal patent law.  In turn, Faneuf/Plasti-Clip point to the fact that their conversion, misappropriation, and unfair competition claims containing elements which are not found within the infringement claim are not preempted.  In this dispute, the Faneuf/Plasti-Clip argument is more persuasive.

The courts have held that claims of unfair competition, Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1373 (Fed. Cir. 1994) (violation of contract rights); Power Lift, Inc. v. Weatherford Nipple-Up Systems, 871 F.2d 1082, 1085 (Fed. Cir. 1989) (unfair competition and unfair and deceptive trade

---

[10]The filing should be on a document entitled "Election of Remedies" and should set forth clearly the remedy chosen.

14

practices); Rubin v. Brooks/Cole Pub. Co., 836 F. Supp. 909, 923 (D. Mass. 1993) (unfair competition and unfair and deceptive trade practice claims), are not preempted by federal law.  The authorities relied upon by Curtis/Judd require no different finding.  Bonito Boats, Inc. v. Thundercraft Boats, Inc., 489 U.S. 141, 165-66 (1989) (no preemption of state law of trade secrets); Summit Machine Tool Mfg. Co. v. Victor CNC Systems, 7 F.3d 1434, 1441 (9th Cir. 1993) (breach of fiduciary duty and breach of confidential relationship furnish "extra element" that bars preemption); Patricia Kennedy & Co. v. Zam-Cul Enterprises, Inc., 830 F. Supp. 53, 57 (D. Mass. 1993) (acquisition of logo by unfair and deceptive means not preempted).

### i.  Validity of the '863 Patent

As requested by Curtis, the court instructed the jury on the issues of anticipation and obviousness.  Its argument was largely grounded on a claim that the prior Rose patent has a disengageable loop.  This claim was rejected not only by Faneuf experts Cohen and Finkel, but also by Charles Powell, an expert who testified for Curtis.  Given this state of the record, it is unsurprising that the jury returned negative answers on the issues of anticipation and obviousness.

15

j.  The Damage Awards

The Curtis/Judd arguments on this issue are based on speculation concerning the time periods and the computation of the jury awards.  The suggestion that the damages violate the "entire market value rule" is not supported by the authorities cited.  Moreover, Faneuf's expert, the only damage expert produced by any of the parties, testified in accordance with the factors outlined in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified on other grounds, 446 F.2d 295 (2d Cir.), cert. denied, 404 U.S. 870 (1971), on which factors the jury was instructed in detail.  Finally, the jury could have, as Faneuf suggests, chosen a percentage of gross revenues (20 percent) and allocated it equally (10 percent) over the differing time periods during which each party could have been found legally at fault.  No duplication of damages can be grounded on such a computation.


k.  Alleged Improper Trial Conduct

In the course of closing argument, Faneuf counsel suggested that his client was the "little guy" and "underdog," and urged the jury to "help Dan Faneuf."  Curtis/Judd took no contemporaneous objection to this line of argument, but

16

subsequently, prior to the instructions of the court, requested a curative instruction.

The court's charge of over two hours was the last proceeding of the day (Thursday), during which the jurors had heard lengthy arguments of counsel. At its outset, the jury was instructed to pay careful attention to the charge, as no written copy thereof would be available to it. And early on in the course of said charge, the jury was told that they were not sitting to give a "helping hand" to any of the parties, and that there were no "underdogs" involved in this litigation, but that each of the parties stood equal and should be considered such by the jury. The last voice heard by the jury was not an argument of counsel, but the instructions of the court.

From the careful approach taken by the jury in its answer to the special verdicts, the court is satisfied that it carefully paid attention to and followed the court's instructions. There is no merit to the argument that conduct of counsel or failure of the court to supply a written copy of the charge to the jury in any way invalidates the verdicts here returned.

17

1.  Conclusion[11]

A strong presumption of regularity attends jury verdicts, Perdoni Bros., Inc., 35 F.3d 1, 5 (1st Cir. 1994). The court has reviewed the record in light of this presumption. With the exception of the duplication found to exist as between conversion damages and assignment of the '078 patent as to which it has ordered election by the successful litigants, see section 1.g., supra, the court finds that the motions of Curtis and Judd seeking JMOL or, alternatively, granting of a new trial or, alternatively, alteration or amendment of the judgment must be and they are herewith denied.

2.  The Faneuf/Plasti-Clip Motion to Reconsider Judgment as a Matter of Law Entered on Issue of Willful Infringement, document 166

At the close of the evidence presented by Faneuf/Plasti-

---

[11]Throughout this litigation, Curtis/Judd have caused the unnecessary demise of countless trees in their efforts to have the last word. As the court was working on its draft with respect to these motions, Curtis and Judd filed additional motions (documents 181, 182) seeking leave to file yet further memos in response to the Faneuf/Plasti-Clip objections. Faneuf/ Plasti-Clip have objected to these more recent motions (documents 183, 184). The court herewith grants these motions, and has reviewed the memos attached thereto, but finds unpersuasive the arguments contained therein.

Clip, the court granted the Curtis motion for judgment as a matter of law, Rule 50(a), Fed. R. Civ. P.,[12] on the issue of willful infringement. Curtis had procured and relied upon a written opinion of Attorney Richard P. Crowley, an experienced outside patent counsel. This opinion explained that the accused product did not come within the claims of the '863 patent. The court found that such evidence served to bar any finding of willful infringement on the part of Curtis.

By their motion, Faneuf/Plasti-Clip challenge this ruling and seek the relief of an enhanced damage award, 35 U.S.C. § 284, or, alternatively, a new trial on the issue of willfulness. Curtis objects (document 171).

A finding of willfulness must be based on clear and convincing evidence that the infringer acted in disregard of the infringed patent with no reasonable basis to believe it had a

---

[12]Rule 50(a)(1), Fed. R. Civ. P., provides,

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

19

right to do the act in question.  *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1279 (Fed. Cir. 1995).

The statutory provision for enhanced damages in patent cases is committed to the discretion of the trial court and requires a finding of willful infringement, although such finding does not mandate that damages be enhanced.  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).  As willfulness is a determination of a state of mind, the affirmative duty to respect another's patent rights "normally entails obtaining advice of legal counsel although the absence of such advice does not mandate a finding of willfulness."  *Id.* at 828 (citation omitted).  Accordingly, "opinion letters should be reviewed to determine whether they evidence an adequate foundation based on a review of all necessary facts or whether they are conclusory on their face."  *Westvaco Corp. v. International Paper Co.*, 991 F.2d 735, 743 (Fed. Cir. 1993) (citing *Read*, *supra*, at 829).  Thus viewed, Attorney Crowley's opinion in this case is clearly competent, and Curtis was justified in relying upon it.

And the fact that the jury found infringement does not serve to dilute the defense of nonwillfulness.  The rule is clear that the importance of counsel's opinion "does not depend upon its legal correctness.  Indeed, the question arises only where counsel was wrong."  *Ortho Pharmaceutical Corp. v. Smith*, 959

20

F.2d 936, 944 (Fed. Cir. 1992); Read, supra, 970 F.2d at 830 (opinion of patent counsel not to be held incompetent because it "turned out to be contrary to the court's judgment with respect to the patent at issue").

Faneuf/Plasti-Clip's reliance on Richardson v. Suzuki Motor Co., Ltd., supra, does not support the argument that willfulness was here a jury issue. The opinion of Attorney Crowley was obtained before Curtis commenced any commercial production of the clipping element at issue. When an opinion of noninfringement is received before such production, there can be no finding of willfulness. Braun v. Dynamics Corp. of America, 975 F.2d 815, 823 (Fed. Cir. 1992) (no willfulness where opinion of noninfringement is received long before the accused product was produced).

The fact that Attorney Crowley in arriving at his opinion did not have before him a commercial clip made by Plasti-Clip does not strengthen the argument for a finding of willfulness. The Federal Circuit has reiterated that it is error, in the context of "infringement analysis [to compare] the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent." Zenith Laboratories v. Bristol-Myers Squibb, 19 F.3d 1418, 1423 (Fed.

21

Cir.), <u>cert. denied</u>, ___ U.S. ___, 115 S. Ct. 500 (1994) (citation omitted). Accordingly, any commercial products of Plasti-Clip were irrelevant to the opinion of outside patent counsel.

And, as the issue on which Crowley opined bore on whether the proposed clipping element to be produced by Curtis came within the scope of the claims of the '863 patent, it mattered not who invented the combination of elements in the '078 patent. The furnishing by Curtis to Attorney Crowley of a blueprint and prototype would be inconsistent with any intent to withhold or conceal information. <u>See</u> <u>Braun</u>, <u>supra</u>, 975 F.2d at 823.

Moreover, there was no requirement that Curtis, contemporaneously with its issue, forward a copy of the Crowley opinion letter to Faneuf/Plasti-Clip. As Curtis had a right to assert the attorney-client privilege, <u>Quantum Corp. v. Tandon Corp.</u>, 940 F.2d 642, 644 (Fed. Cir. 1991), it had the right to withhold Crowley's opinion until trial. <u>See</u> <u>Electro Medical Systems, S.A. v. Cooper Life Sciences</u>, 34 F.3d 1048, 1056-58 (Fed. Cir. 1994) (no willfulness, even though infringer claimed attorney-client privilege through litigation when totality of evidence militated against such a finding).

The rulings on willfulness set forth in <u>American Medical Systems, Inc. v. Medical Eng'g Corp.</u>, 6 F.3d 1523, 1530-32 (Fed.

22

Cir. 1993), cert. denied, ___ U.S. ___, 114 S. Ct. 1647 (1994), do not support the Faneuf/Plasti-Clip arguments here made. In that case, the infringer relied on the undocumented opinion of in-house patent counsel and a written opinion of outside patent counsel which was not received until 20 months after infringement had commenced.

Similarly, the circumstances in Minnesota Mining & Mfg. Co. v. Johnson & Johnson, 976 F.2d 1559, 1580-82 (Fed. Cir. 1992), are so dissimilar to those in this case as to deprive the case of any persuasive value. In that case, the infringer relied on the nonobjective oral opinion of in-house counsel, who had personally participated in using trade secrets that he knew had been stolen by a former employee of the patent owner. Id. at 1564, 1581-82.

Moreover, any "copying" of a product is not relevant unless Curtis copied a product it knew was patented. Having been advised by medium of Crowley's opinion letter that the proposed Curtis clipping element was not within the scope of the '863 patent, Curtis was entitled to proceed in reliance on such opinion. Nor does the case contain any willful misrepresentation of trade secrets as demonstrated in Minnesota Mining, supra, or of the specifically identifiable trade secrets at issue in Richardson, supra. In fact, no trade secrets relating to the '863 patent were ever in issue.

23

In sum, consideration of the totality of the circumstances satisfies the court that Faneuf/Plasti-Clip have failed to carry their burden of proving willful infringement by medium of clear and convincing evidence. Electro Medical Systems, supra, 34 F.3d at 1056. The motion for reconsideration of the issue of willfulness must necessarily be and it is herewith denied.


3. Faneuf/Plasti-Clip's Motion for Award of Attorney's Fees and Expenses Pursuant to 35 U.S.C. § 285, document 159

Estimating the total amounts thereof at $308,973.16, and claiming the "exceptional" classification of 35 U.S.C. § 285,[13] Faneuf/Plasti-Clip move for an award of attorney fees and expenses (document 159). Objections have been filed by Curtis (document 171) and Judd (document 176).

The purpose of 35 U.S.C. § 285 "'is to provide discretion where it would be grossly unjust that the winner be left to bear the burden of his own counsel, which prevailing litigants normally bear.'" Badalamenti v. Dunham's, Inc., 896 F.2d 1359, 1364 (Fed. Cir. 1990) (quoting J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047, 1052 (Fed. Cir. 1987)). Exceptional circumstances generally exist when the defendant's conduct causes an

[13]35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

24

unnecessary and outcome-certain lawsuit or where the defendant displays bad faith in the pretrial and trial states of the suit. Oscar Mayer Foods Corp. v. Conagra, Inc., 869 F. Supp. 656 (W.D. Wisc.), aff'd without opinion, 45 F.3d 443 (Fed. Cir. 1994). Examples of such improper conduct may include "inequitable conduct during prosecution of a patent, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit." Bayer Aktiengesellschaft v. Duphar Int'l Research B.V., 738 F.2d 1237, 1242 (Fed. Cir. 1984) (footnotes and citations omitted).

In consideration of a request for an award of attorney fees, the two-step inquiry requires the judge to (1) determine whether there is clear and convincing evidence that the case is "exceptional", and, if so, (2) whether an award of attorney fees to the prevailing party is warranted. Interspiro USA, Inc. v. Figgie Int'l, Inc., 18 F.3d 927, 933 (Fed. Cir. 1994). The instant case founders on the first of these inquiries.

Here, there was neither willful infringement nor improper litigation conduct on the part of defendants. Curtis, in fact, sought the first determination as to the validity of the '863 patent. The jury findings do not serve to demonstrate inequitable conduct, which requires proof of failure to disclose material information, or submission of false information with an

25

intent to deceive.  <u>Merck & Co., Inc. v. Danbury Pharmacal, Inc.</u>, 873 F.2d 1418, 1420 (Fed. Cir. 1989).  The record in this case contains no misleading of the Patent & Trademark Office (PTO), discovery abuses, or prosecution of frivolous litigation, as was the case in <u>Mathis v. Spears</u>, 857 F.2d 749 (Fed. Cir. 1988).  Nor was there any concealment of extensive prior sales and advertising of a patented device prior to the filing of the patent application as in <u>Hughes v. Novi Am., Inc.</u>, 724 F.2d 122 (Fed. Cir. 1984).  The case was simply a hard-fought, closely contested presentation of issues, upon some of which Faneuf/Plasti-Clip prevailed.

The court finds that this is not "an exceptional" case within the meaning of 35 U.S.C. § 285, and the motion for attorney fees must be and is herewith denied.


<u>4.  Faneuf/Plasti-Clip Motion to Add Prejudgment Interest to the Infringement Violation, document 160</u>

The jury found that Curtis infringed the '863 patent and awarded damages for such infringement.  Invoking relevant provisions of 35 U.S.C. § 284,[14] the movants seek prejudgment

_____

[14]35 U.S.C. § 284 provides in relevant part, "Upon finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by

26

interest on such verdict.  Curtis objects (document 173).

Ordinarily, prejudgment interest should "be awarded where necessary to afford the plaintiff full compensation for the infringement."  General Motors Corp. v. Devex Corp., 461 U.S. 648, 654 (1983).  But an award of prejudgment interest is not required "whenever infringement is found."  Id. at 656.  The discretionary circumstances in which interest may be limited or denied include cases "where the patent owner has been responsible for undue delay in prosecuting the lawsuit."  Id. at 657.

For example, in Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540 (Fed. Cir. 1991), prejudgment interest was awarded in part, but denied for a substantial period during which proceedings were stayed upon agreement of the parties but at the request of the plaintiff.  Id. at 1546.  Pointing to this authority, Curtis argues for a denial of interest for the period proceedings herein were stayed due to its bankruptcy.

The court finds merit in this argument and, accordingly, while prejudgment interest will be awarded, it will be computed at the simple rate and is to run from the date this action was reinstated on March 31, 1994.

_____

the infringer, together with interest and costs as fixed by the court."

27

## 5. Faneuf/Plasti-Clip's Motion for Prejudgment Interest on the State Law Claims, document 161

This motion seeks to recover prejudgment interest on the verdicts returned on the state law claims. Objections have been filed by Curtis (document 172) and Judd (document 175).

New Hampshire Revised Statutes Annotated (RSA) 524:1-b provides for interest in damage cases "from the date of the writ . . . to the date of . . . verdict." Id. The computation is based on simple interest; that is, 10 percent. RSA 336:1; Metropolitan Property & Liab. Ins. Co. v. Ralph, 138 N.H. 378, 384-86, 640 A.2d 763, 767-68 (1994). Faneuf/Plasti-Clip seek interest awards computed on this basis as against Curtis and Judd.

As of this writing, the court has found that Faneuf/Plasti-Clip must elect either to retain conversion damage or accept assignment of the '078 patent. Putting this finding aside, however, and assuming arguendo the viability of the conversion damages, the court finds that failure to present evidence of the discounted value of such damages to the jury bars any award of prejudgment interest under RSA 524:1-b on the state law claims. W.H. Elliott & Sons Co. v. E & F King Co., 291 F.2d 79, 84 (1st Cir. 1961). Accordingly, the motion for prejudgment interest on the state law claims is denied.

28

6.  Faneuf/Plasti-Clip Motion for Injunctive Relief, document 164

Absent a sufficient reason for its denial, an injunction ordinarily should issue once infringement has been established. W.L. Gore & Assoc., Inc. v. Garlock, Inc., 842 F.2d 1278, 1281 (Fed. Cir. 1988).  Invoking this rule, Faneuf/Plasti-Clip seek to amend the judgment to include entry of a permanent injunction against Curtis and Judd concerning both the '863 patent and the '078 patent.  Curtis (document 170) and Judd (document 174) object.

The reason that the patent statute, 35 U.S.C. § 283,[15] provides for injunctive relief is the preservation of legal rights of the parties against future infringement, which may have market effects never fully compensable in money.  Reebok Int'l, Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1557 (Fed. Cir. 1994). Curtis argues, however, that the instant litigation does not fall within the typicality range in which injunctive relief is available.  Judd contends that as he has not been associated with Curtis in any manner since 1994 and has never had any ownership

_____

[15]35 U.S.C. § 283 provides, "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."

29

interest in the '078 patent, no injunctive relief should enter as against him.

Permitted to the discretion of the court, the grant of an injunction must be "'to prevent the violation of any right secured by patent.' 35 U.S.C. § 283." Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 772 (Fed. Cir. 1993). However, an injunction for infringements may not be punitive. Id. at 773.

The fact that Plasti-Clip may not have attempted to manufacture or market its clip in the document holder field does not militate against injunctive relief as concerns the '863 patent. Rite-Hite Corp. v. Kelly Co., Inc., 56 F.3d 1538, 1547 (Fed. Cir. 1995) (patent owner may enforce its rights under patent irrespective of its own use of the patented invention). And this is not one of those "rare instances" where discretion should be exercised to deny injunctive relief in order to protect the public interest. Id. In general, "'protecting patents from would-be infringers is always acting in the public interest.'" Schneider (Europe) AG v. Scimed Life Systems, Inc., 852 F. Supp. 813, 861 (D. Minn. 1994) (quoting Pittway v. Black & Decker, 667 F. Supp. 585, 593 (N.D. Ill. 1987)), appeal dismissed without opinion, 26 F.3d 140 (Fed. Cir. 1994). And the fact that Judd no longer is engaged in manufacture or design of the accused product does not bar the issuance of an injunction against him.

30

Schneider, supra, 852 F. Supp. at 861.

There is merit to the objection as to the scope of the proposed draft injunction, which sweeps too widely in its proposed relief. Accordingly, the court will issue its order of injunction tailored to comply with the requirements of Rule 65(d), Fed. R. Civ. P. Moreover, as hereinafter considered, there is an issue as to the time at which the injunctive relief should take effect.

What has been written to this point has application only to the '863 patent. As there was no finding of infringement of the '078 patent, and as, depending on their election, Faneuf/Plasti-Clip may either choose the award of damages for conversion thereof or assignment of that patent, injunctive relief should not and will not issue as to the '078 patent.

7. The Curtis Motion to Stay Injunction Pending Appeal, document 179

As previously indicated, the court has found that Faneuf/Plasti-Clip are entitled to injunctive relief as respects the '863 but not the '078 patent. Curtis now seeks a stay of such injunction pending resolution of any appeal.

The factors governing the issuance of a stay pending appeal are "'(1) whether the stay applicant has made a strong showing

31

that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Standard Havens Products v. Gencor Indus., 897 F.2d 511, 512 (Fed. Cir. 1990) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

These factors, however, are not of equal weight. Standard Havens, supra, at 512. When "harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.'" Id. at 513 (quoting Hilton, at 776). Accordingly, while the court is here doubtful as to "the strength of [Curtis's] showing of likely success on appeal," the court faces "a difficult balancing act, both on the issue of the hardship to the parties involved and in terms of the public interest." In re Hayes Microcomputer Products Patent Litig., 766 F. Supp. 818, 823 (N.D. Cal. 1991), aff'd, 982 F.2d 1527 (Fed. Cir. 1992).

The prevailing parties in this litigation are not now nor do they appear to be in a position in the near future to compete with Curtis in the document holder market. That market comprises a number of mass purchasers, such as Wal Mart, Lechmere, etc., who, in turn, purchase from a limited number of producers, and

32

which favors purchasing from companies who have a full product line.  Delaying the application of injunctive relief until resolution of the appeal will impose a lesser hardship on Faneuf/Plasti-Clip than it will on Curtis.

Moreover, the court has earlier approved a bond for stay of execution of judgment in the substantial sum of $814,000 (document 185).  On consideration of the issue of hardship to the parties and in terms of the public interest, the court finds and rules that the injunction to be issued should be and will be delayed until the appeal in this action has been resolved.

## 8.  Faneuf/Plasti-Clip's Motion for Assignment of all Foreign Counterparts of '078 Patent, document 165

Seeking to amend the judgment to include an assignment by Curtis to Faneuf of any and all foreign counterparts of the '078 patent, this motion is objected to by Curtis (document 169).

It is well established that issues may be tried by either the express or implied consent of the parties.  Rule 15(b), Fed. R. Civ. P.[16]  Here there was no express consent, and the issue of

---

[16]Rule 15(b), Fed. R. Civ. P., provides,

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the

33

implied consent depends "on whether the parties recognized that an issue not presented by the pleadings entered the case at trial."  6A Wright, Miller & Kane, Federal Practice and Procedure: Civil (Second) § 1493, at 19 (West, 1990).  But "it cannot be fairly said that there is any implied consent to try an issue if the parties do not squarely recognize it as an issue in the trial." 3 Moore's Federal Practice ¶ 15.13[2], at 15-130, 131 (Matthew Bender & Co. 1995).

Additionally, a party intending to raise an issue concerning foreign law must "give notice by pleadings or other written notice."  Rule 44.1, Fed. R. Civ. P.; 9 Wright & Miller, Federal Practice and Procedure: Civil (Second) § 2443 (West 1995).  Absent such

---

pleadings.  Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.  If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.  The court may grant a continuance to enable the objecting party to meet such evidence.

notice, "the courts are not required to take judicial notice of the applicability of foreign law."  5 MOORE'S FEDERAL PRACTICE § 44.1.03 at 44.1-6 (Matthew Bender 1995).

In this case, no pleadings, motions, or evidence adduced served to notify the court or counsel that any issue of foreign law was to be litigated.  And even were such issues here raised, they could not be resolved unless the court possessed jurisdiction over them.  6A WRIGHT, ET AL., supra, § 1493, at 50.

Without any showing of similarity of relation of any foreign patent to the '078 patent, this court is not in a position to assume jurisdiction.  Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1375 (Fed. Cir. 1994).  Moreover, the independence of the United States courts from foreign courts possessed of jurisdiction over foreign patents militates against expansion of jurisdiction over such foreign patents.  Stein Assoc. v. Heat & Control, Inc., 748 F.2d 653, 658 (Fed. Cir. 1984).

In short, having failed to raise an issue concerning foreign patents or jurisdiction of this court thereover in the course of this litigation, Faneuf/Plasti-Clip cannot now claim entitlement to an assignment of any such foreign patents, and their motion must be and it is herewith denied.

9. Conclusion

For the reasons hereinabove set forth, with the exception of requiring Faneuf/Plasti-Clip to elect either assignment of the '078 patent or the award of conversion damages, supra note 10, the renewed motions of Curtis and Judd for judgment as a matter of law or, alternatively, new trials or, alternatively, to alter and amend judgment (documents 162, 163) have been denied.

The Faneuf/Plasti-Clip motion to reconsider judgment as a matter of law on the issue of willful infringement (document 166) has been denied.

The Faneuf/Plasti-Clip motion for attorney fees (document 159) has been denied.

The Faneuf/Plasti-Clip motion for prejudgment interest on the infringement violation (document 160) has been granted in part. Interest is to be computed at the simple rate of 10 percent, and is to run only from March 31, 1994.

The Faneuf/Plasti-Clip motion for prejudgment interest on the state law claims (document 161) has been denied.

The Faneuf/Plasti-Clip motion for injunctive relief (document 164) has been granted, but as the court has also granted the Curtis motion to stay injunctive relief pending appeal (document 179), injunction will not issue until completion of the appellate process.

36

The Faneuf/Plasti-Clip motion for assignment of foreign counterparts of the '078 patent (document 165) has been denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

September 14, 1995

cc:   William O. Hennessey, Esq.
      Jamie N. Hage, Esq.
      Jack R. Pirozzolo, Esq.
      Craig L. Staples, Esq.
      W. Wright Danenbarger, Esq.
      Robert E. McDaniel, Esq.